23 P.3d 440 (2001)
Eleanor HILL, a single woman, Petitioner,
v.
BCTI INCOME FUND-I, a Washington limited partnership, d/b/a/ Business Computer Training Institute, a Washington corporation; John Doe and Jane Doe I-X, d/b/a BCTI Associates; Business Computer Training Institute, Inc., a corporation, Respondents.
No. 68783-8.
Supreme Court of Washington, En Banc.
Argued October 17, 2000.
Decided May 17, 2001.
As Amended on Denial of Reconsideration July 17, 2001.
*443 Jeffrey Lowell Needle, Michael Craig Subit, Seattle, Amicus Curiae on Behalf of Washington Employment Lawyers Association.
Keating, Bucklin & McCormack, Stewart Andrew Estes, Seattle, Amicus Curiae on Behalf of Washington Defense Trial Lawyers.
Krilich, La Porte, West & Lockner, Thomas Joseph West, Philip I. Brennan, Jr., Tacoma, for Petitioner.
Lane, Powell, Spears & Lubersky, Michael Barr King, Jackson, Lewis, Schnitzler & Krupman, Wayne W. Hansen, Seattle, for Respondents. *441
*442 BRIDGE, J.
We are asked to clarify the evidentiary standard that a plaintiff with a chapter 49.60 RCW employment discrimination claim must meet to survive a motion for judgment as a matter of law. The Court of Appeals adopted the so-called "pretext-plus" standard, which was recently rejected by the United States Supreme Court in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). We, too, reject the pretext-plus standard and thus vacate the Court of Appeals' opinion. We affirm its rulings in this case on different grounds.

FACTS
In August 1993, Randy Potter of the Business Computer Training Institute, Inc. (BCTI) hired Eleanor Hill, who was 53 years old at the time. She soon proved to be the top recruiter in BCTI's Tacoma Lacey marketing *444 office. On January 14, 1994, Hill signed the following notice:
It is a policy of BCTI that an employee not discuss financial arrangements with any other employee[,] i.e. current salary, raises, problems with hours or commissions, and/or benefits. Doing so is grounds for immediate and automatic termination. If problems or questions arise[,] discuss them with your supervisor.
Def.'s Ex. 29. That month, Hill told her supervisors, Terry Clark and Potter, that she was interested in transferring to BCTI's Southcenter office, since she was moving to Seattle to live near her mother, who was ill and in her 80s. They assured her that such a transfer could be arranged. They took no action, however, explaining later that they did not construe her comments as a formal request for a transfer. Hill moved to Seattle in February 1994 and began commuting to her work in Tacoma. A recipient of social security benefits since 1988 for, inter alia, chronic asthma, Hill told Potter and Clark on several occasions over the next few months that she believed the commute was aggravating her asthma and that she needed to transfer offices.
On May 3, 1994, Hill was hospitalized for several days following a severe asthma attack. Hill's daughter called BCTI to inform the company that Hill had been hospitalized for asthma and Potter and Clark each called Hill at the hospital. She reiterated her desire for a transfer, and both supervisors promised to help arrange it, though neither took any action toward that end.
Hill was absent from work the rest of May, reportedly recuperating. During that time, she phoned Tammy Johnson, public relations supervisor at BCTI's Southcenter office, to ask if there were any job openings. "Not at this time," Hill was told, but "[k]eep in touch." Report of Proceedings (RP) at 131-32. On May 24, Hill carpooled with Southcenter office employees to BCTI's annual company-wide retreat in Port Townsend. On the way, Hill and Johnson discussed a possible office transfer. Johnson and Rose Medley, who was also present, later said under oath (1) that Hill had insisted she would transfer to the Southcenter office only if offered similar pay, hours, and benefits, and (2) that Hill had claimed she was already earning $8 an hour, working 40 hours a week, and receiving benefits. At the time, Hill was working part-time, for $7.50 an hour, without health care benefits. In a sworn deposition, Hill said she told Johnson she was making "$7.50 or $8, around that figure" at BCTI's Tacoma office and working "37, 35, 37 [hours], something along there" per week. RP at 184-85. But later, when asked at trial, "Did you tell the people at Southcenter then what you were making at Tacoma?" Hill responded under oath, "Never." RP at 138. Hill denied violating the company policy, having simply told Johnson that she "would have to make $8 an hour" and "have full-time and benefits" before she would agree to a transfer. RP at 137.
After the retreat, Hill followed-up with Johnson by phone and scheduled a job interview for the following week. On June 6, 1994, Hill returned to work and spoke with Potter. She requested a transfer to BCTI's Southcenter office, explaining that her asthma was making the commute unbearable. Under oath, Potter later claimed this was the first time Hill had formally requested a transfer. Potter promised Hill he would talk to Clark about it. The next day, Potter asked Hill whether it was true that she was already pursuing the transfer on her own and that she had disclosed her current salary and benefits to Johnson. Hill admitted doing the former after repeatedlyand unsuccessfully asking Potter and Clark to arrange the transfer, but denied disclosing her terms of employment. On or about June 8, 1994, Potter and Clark met with Hill. When Hill repeated her earlier characterization of her conversations with Johnson, she was fired. Hill was given the following explanation for her termination: "Because you lied to us. You didn't tell us the truth." RP at 148. Neither Potter nor Clark was later able to recall any other instance when Hill's honesty was in doubt. The record indicates that Hill, an African-American, was replaced at BCTI by an African-American man and a Caucasian woman, both under age 40.
Hill brought this action against BCTI in Pierce County Superior Court, claiming she *445 had been unlawfully fired because of age, race, and disability, in violation of chapter 49.60 RCW, Washington's Law Against Discrimination (WLAD).[1] At the close of Hill's case in chief, BCTI moved to dismiss all claims as a matter of law under CR 50. The court granted a directed verdict on Hill's disability-based claim, but permitted the two remaining claims to go to the jury. The jury rejected Hill's race-based claim, but found it more probable than not that BCTI had unlawfully fired her because of her age and awarded her $119,000 in damages. The court denied BCTI's motion for a judgment notwithstanding the verdict and awarded Hill costs and attorney fees.
BCTI appealed the jury verdict, and Hill cross-appealed the directed verdict. The Court of Appeals affirmed the latter, but set aside the jury's age discrimination verdict for insufficient evidence, relying on court rulings adopting the "pretext-plus" standard. Hill v. BCTI Income Fund-I, 97 Wash.App. 657, 661, 986 P.2d 137 (1999) (citing, e.g., Fisher v. Vassar College, 114 F.3d 1332 (2d Cir. 1997), cert. denied, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998)). After we granted review, the United States Supreme Court rejected the "pretext-plus" standard. Reeves, 530 U.S. at 146-47,120 S.Ct. at 2108.

ANALYSIS
RCW 49.60.180(2) makes it unlawful for employers "[t]o discharge or bar any person from employment because of age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical disability." Because work-place discrimination is "a matter of state concern ... [that] threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state," RCW 49.60.010, the Legislature has mandated that WLAD provisions "shall be construed liberally for the accomplishment of the purposes thereof." RCW 49.60.020. While employers deserve protection from frivolous lawsuits and from jury verdicts not reasonably supported by evidence, courts must carefully consider all allegations of unlawful discrimination, since the WLAD "embodies a public policy of `the highest priority.'" Xieng v. Peoples Nat'l Bank, 120 Wash.2d 512, 521, 844 P.2d 389 (1993) (quoting Allison v. Housing Auth., 118 Wash.2d 79, 86, 821 P.2d 34 (1991)).
Direct, "smoking gun" evidence of discriminatory animus is rare, since "[t]here will seldom be `eyewitness' testimony as to the employer's mental processes," United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), and "employers infrequently announce their bad motives orally or in writing." deLisle v. FMC Corp., 57 Wash. App. 79, 83, 786 P.2d 839 (1990). Consequently, it would be improper to require every plaintiff to produce "direct evidence of discriminatory intent." Aikens, 460 U.S. at 714 n. 3, 103 S.Ct. 1478. Courts have thus repeatedly stressed that "[c]ircumstantial, indirect and inferential evidence will suffice to discharge the plaintiffs burden." Sellsted v. Wash. Mut. Sav. Bank, 69 Wash.App. 852, 860, 851 P.2d 716, review denied, 122 Wash.2d 1018, 863 P.2d 1352 (1993). "Indeed, in discrimination cases it will seldom be otherwise ...." deLisle, 57 Wash.App. at 83, 786 P.2d 839.
Recognizing this reality, the United States Supreme Court established an evidentiary burden-shifting protocol in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to "compensate for the fact that direct evidence of intentional discrimination is hard to come by." Price Waterhouse v. Hopkins, 490 U.S. 228, 271, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring). "`The shifting burdens of proof set forth in McDonnell Douglas are designed to assure that the "plaintiff [has] his [or her] day in court despite the unavailability of direct evidence."'" Sellsted, 69 Wash.App. at 864, 851 P.2d 716 (first alteration in original) (quoting Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 898 (3d Cir.), cert. dismissed, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987) (quoting Trans World Airlines, Inc. v. Thurston, 469 *446 U.S. Ill, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985))).
Washington courts have largely adopted the federal protocol announced in McDonnell Douglas for evaluating motions for judgment as a matter of law in discrimination cases brought under state and common law, where the plaintiff lacks direct evidence of discriminatory animus. Kastanis v. Educ. Employees Credit Union, 122 Wash.2d 483, 490, 859 P.2d 26, 865 P.2d 507 (1993). Still, while federal employment law rulings represent "a source of guidance, we bear in mind that they are not binding and that we are free to adopt those theories and rationale which best further the purposes and mandates of our state statute." Grimwood v. Univ. of Puget Sound, Inc., 110 Wash.2d 355, 361-62, 753 P.2d 517 (1988); see also Allison, 118 Wash.2d at 90-91, 821 P.2d 34. While McDonnell Douglas requires both parties to carry their respective "intermediate evidentiary burdens" to avoid an unfavorable judgment as a matter of law, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253,101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).
(1) Prima Facie Case: The plaintiff bears the first intermediate burden, namely, that of setting forth a prima facie case of unlawful discrimination. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817. A prima facie case of racial discrimination, for instance, is generally established "by showing (i) that [the plaintiff] belongs to a racial minority; (ii) that he [or she] applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his [or her] qualifications, he [or she] was rejected; and (iv) that, after his [or her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." Id.[2] Unless a prima facie case of discrimination is set forth, the defendant is entitled to prompt judgment as a matter of law. Kastanis, 122 Wash.2d at 490, 859 P.2d 26 (citing Burdine, 450 U.S. at 254, 101 S.Ct. 1089).
(2) Nondiscriminatory Explanation: If a prima facie case is established, a "legally mandatory, rebuttable presumption" of discrimination temporarily takes hold, Burdine, 450 U.S. at 254 n. 7, 101 S.Ct. 1089, and the evidentiary burden shifts to the defendant to produce admissible evidence of a legitimate, nondiscriminatory-explanation for the adverse employment action sufficient to "raise[ ] a genuine issue of fact as to whether [the defendant] discriminated against the plaintiff." Burdine, 450 U.S. at 254-55, 101 S.Ct. 1089; Wilmot v. Kaiser Aluminum & Chem. Corp., 118 Wash.2d 46, 70, 821 P.2d 18 (1991). This is merely a burden of production, not of persuasion. Grimwood, 110 Wash.2d at 364, 753 P.2d 517. "If the defendant fails to meet this production burden, the plaintiff is entitled to an order establishing liability as a matter of law," Kastanis, 122 Wash.2d at 490, 859 P.2d 26, "because no issue of fact remains in the case." Burdine, 450 U.S. at 254, 101 S.Ct. 1089. If, however, the defendant meets this intermediate production burden, the presumption established by the prima facie evidence is rebutted and, "having fulfilled its role of forcing the defendant to come forward with some response, [the presumption] simply drops out of the picture." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).[3]
(3) "Evidence of Pretext": Once the presumption is removed, the burden of proof shifts back to the plaintiff, who must then "be afforded a fair opportunity to show that [defendant's] stated reason for [the adverse action] was in fact pretext." McDonnell Douglas, 411 U.S. at 804, 93 S.Ct. 1817. If the plaintiff proves incapable of doing so, the *447 defendant becomes entitled to judgment as a matter of law. Grimwood, 110 Wash.2d at 365, 753 P.2d 517.
The United States Supreme Court's initial articulation of this third intermediate evidentiary burden fostered great confusion nationwide. Several lower federal courts concluded that, once a plaintiff had (a) set forth a prima facie case of employment discrimination and (b) discredited the employer's explanation, a verdict for the plaintiff was required. The Court sharply rejected such logic in St. Mary's Honor Ctr. v. Hicks.[4] That decision, however, then led other lower federal courts to conclude that such a showing was never adequate to support a circumstantial discrimination claim and should always result in a judgment for the defendant as a matter of law.
Federal circuits soon found themselves split into three distinct camps over how to apply the third McDonnell Douglas intermediate burden.[5] "Pretext-only" courts held that a "prima facie case combined with sufficient evidence to disbelieve [the] employer's explanation always creates [a] jury issue of whether [the] employer intentionally discriminated," Reeves, 530 U.S. at 140, 120 S.Ct. at 2104 (emphasis added), thereby always precluding judgment as a matter of law for the defendant. "Pretext-plus" courts held that such a showing is never by itself adequate to prove employment discrimination and therefore, without more, should always result in judgment for the defendant as a matter of law. Reeves, 530 U.S. at 140, 120 S.Ct. at 2105. "Hybrid-pretext" courts held that while such a showing "is entitled to considerable weight, such that [a] plaintiff should not be routinely required to submit evidence over and above proof of pretext," id. at 140, 120 S.Ct. at 2105, such evidence could sometimes prove insufficient to avoid a judgment as a matter of law. Aka v. Wash. Hosp. Ctr., 156 F.3d 1284,1292 (D.C.Cir.1998).
This past June, however, the United States Supreme Court issued a unanimous decision in Reeves, a federal Age Discrimination in Employment Act (ADEA) case, in an effort to
resolve a conflict among the [federal] Courts of Appeals as to whether a plaintiffs prima facie case of discrimination (as defined in [McDonnell Douglas]), combined with sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision, is adequate to sustain a finding of liability for intentional discrimination.
Reeves, 530 U.S. at 140, 120 S.Ct. at 2104 (cases collected). The Court resolved the conflict in a way that displeased both plaintiffs and defendants in employment discrimination cases. Defendants were displeased because the Court expressly rejected the so-called "pretext-plus" position. See, e.g., Washington Defense Trial Lawyers Amicus Br. at 5. The Court ruled that
it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation.... Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." Moreover, once the *448 employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Thus, a plaintiffs prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.
Reeves, 530 U.S. at 147-48, 120 S.Ct. at 2108-09 (citations omitted).[6] However, in a statement that displeased employment discrimination plaintiffs, the Court also rejected the "pretext-only" position:
This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. To hold otherwise would be effectively to insulate an entire category of employment discrimination cases from review under [Fed.R.Civ.P. 50], and we have reiterated that trial courts should not "`treat discrimination differently from other ultimate questions of fact.'"
Reeves, 530 U.S. at 148, 120 S.Ct. at 2109 (citations omitted) (emphasis added) (quoting St. Mary's, 509 U.S. at 524, 113 S.Ct. 2742 (quoting Aikens, 460 U.S. at 716, 103 S.Ct. 1478)).[7]
The United States Supreme Court thus embraced a "hybrid-pretext" standard similar, if not identical, to the one articulated two years earlier by the District of Columbia Circuit in Aka. The Aka court held that, while a plaintiff "cannot always" survive a motion for judgment as a matter of law with a prima facie case plus evidence sufficient to disbelieve the employer's proffered explanation, "such a showing does have considerable evidentiary significance." 156 F.3d at 1292. Moreover, if such a showing permits a reasonable factfinder to "infer that the employer's explanation is not only a mistaken one in terms of the facts, but a lie, that should provide even stronger evidence of discrimination." Id. at 1293; see also St. Mary's, 509 U.S. at 511,113 S.Ct. 2742.
For the reasons articulated in both Reeves and Aka, we, too, reject the "pretext-only" and "pretext-plus" standards in circumstantially based discrimination claims brought under state law. Instead, we hold that while a McDonnell Douglas prima facie case, plus evidence sufficient to disbelieve the employer's explanation, will ordinarily suffice to require determination of the true reason for the adverse employment action by a factfinder in the context of a full trial,[8] that will not always be the case. In *449 the words of the United States Supreme Court:
Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiffs prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.
Reeves, 530 U.S. at 148-49, 120 S.Ct. at 2109.
(4) Trial Required: Once a court determines that the parties have met all three McDonnell Douglas intermediate burdens and that the record contains reasonable but competing inferences of both discrimination and nondiscrimination, "it is the jury's task to choose between such inferences." Carle v. McChord Credit Union, 65 Wash. App. 93, 102, 827 P.2d 1070 (1992) (citing United States v. Stanley, 928 F.2d 575, 577 (2d Cir.), cert. denied, 502 U.S. 845,112 S.Ct. 141, 116 L.Ed.2d 108 (1991)); see also Hume v. Am. Disposal Co., 124 Wash.2d 656, 667-68, 880 P.2d 988 (1994) ("`When all three facets of the [McDonnell Douglas] burden of production have been met, the case must be submitted to the jury.'" (quoting Carle, 65 Wash.App. at 102, 827 P.2d 1070)). The trier of fact must then hear and evaluate the parties' dueling explanations for the adverse action and reasonably determine whether the plaintiff has carried his or her ultimate evidentiary burden.[9] That ultimate burden in cases brought under RCW 49.60.180 is to present evidence sufficient for a trier of fact to reasonably conclude that the alleged unlawfully discriminatory animus was more likely than not a substantial factor in the adverse employment action. Mackay v. Acorn Custom Cabinetry, Inc., 127 Wash.2d 302, 311, 898 P.2d 284 (1995) (citing Kastanis, 122 Wash.2d at 491, 859 P.2d 26). If the jury returns a verdict that is not reasonably grounded in the evidence presented, a motion for a judgment notwithstanding the verdict (JNOV) should be granted, as in any other case. Reeves, 530 U.S. at 148-9, 120 S.Ct. at 2109.
I
Applying these principles to the instant case, we first consider whether BCTI's JNOV motion on Hill's age discrimination claim was correctly adjudicated. Motions for judgments as a matter of law are reviewed de novo, applying the same legal standard as the trial court. Hume v. Am. *450 Disposal Co., 124 Wash.2d at 667, 880 P.2d 988.
"A JNOV is proper only when the court can find, `as a matter of law, that there is neither evidence nor reasonable inference therefrom sufficient to sustain the verdict.' Brashear v. Puget Sound Power & Light Co., 100 Wash.2d 204, 208-09, 667 P.2d 78 (1983) (quoting Hojem v. Kelly, 93 Wash.2d 143, 145, 606 P.2d 275 (1980)). A motion for a JNOV admits the truth of the opponent's evidence and all inferences that can be reasonably drawn therefrom, and requires the evidence be interpreted most strongly against the moving party and in the light most favorable to the opponent. No element of discretion is involved. Davis v. Early Constr. Co., 63 Wash.2d 252, 254-55, 386 P.2d 958 (1963)."
Aluminum Co. of Am. v. Aetna Cos. & Sur., 140 Wash.2d 517, 529, 998 P.2d 856 (2000) (quoting Goodman v. Goodman, 128 Wash.2d 366, 371, 907 P.2d 290 (1995)).
It is unlawful for employers "[t]o discharge ... any person from employment because of age." RCW 49.60.180(2). To make out a McDonnell Douglas prima facie case of wrongful discharge due to age, a plaintiff must show that he or she (1) was within the statutorily protected age group; (2) was discharged by the defendant; (3) was doing satisfactory work; and (4) was replaced by a significantly younger person.[10]Grimwood, HO Wash.2d at 362, 753 P.2d 517. The record shows that Hill was (1) between 40 and 70 years of age at the time, RCW 49.44.090; 49.60.205; (2) by all accounts excelled at her job as a BCTI recruiter; (3) was discharged by BCTI; and (4) was replaced by significantly younger persons. Indeed, BCTI concedes that Hill successfully established a prima facie case of age discrimination. See BCTI's Opening Br. at 2, 7. Hill also presented sufficient evidence to raise a material question of fact regarding the accuracy of BCTI's explanation for her firing.
That, however, does not resolve the issues raised by BCTI's JNOV motion.[11] As the United States Supreme Court has pointed out, "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." Reeves, 530 U.S. at 148, 120 S.Ct. at 2109. We believe this is such a case. Hill failed to present sufficient evidence to reasonably support even a circumstantial case of wrongful discharge due to age.
When someone is both hired and fired by the same decisionmakers within a relatively short period of time, there is a strong inference that he or she was not discharged because of any attribute the decisionmakers were aware of at the time of hiring. Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270-71 (9th Cir.1996) ("[W]here the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference *451 arises that there was no discriminatory motive.") (citing Lowe v. J.B. Hunt Transp., Inc., 963 F.2d 173, 175 (8th Cir.1992) ("It is simply incredible, in light of the weaknesses of plaintiffs evidence otherwise, that the company officials who hired him at age fifty-one had suddenly developed an aversion to older people less than two years later.")).[12] For a plaintiff to prevail under such circumstances, the evidence must answer an obvious question: if the employer is opposed to employing persons with a certain attribute, why would the employer have hired such a person in the first place?[13] The record here fails even to suggest an answer.
Indeed, the only age-related evidence in the record was the ages of the persons involved. Potter himself was over 40 years old when Hill was fired, and there was no evidence or testimony that he or anyone else at BCTI had made derogatory ageist comments or otherwise discriminated against older workers, or that Hill's age had proved problematic in any way. And while Hill's testimony raised a question of fact regarding BCTI's explanation for firing her, its probative value in establishing Hill's ultimate claim of age discrimination proved minimal.[14]
We find as a matter of law that no trier of fact could, after considering such evidence in light of the fact that the same decision makers had authority over both Hill's hiring as well as her firing less than a year later, reasonably conclude that her age was more likely than not a substantial factor in BCTI's decision to terminate her. The trial court thus erred in denying BCTI's JNOV motion, and we affirm the Court of Appeals' reversal of that ruling.[15]

II
Secondly, we evaluate the issue raised in Hill's cross-appeal, namely, whether the trial court was correct to enter a directed verdict in favor of BCTI pursuant to CR 50(a)(1)[16] on Hill's claim that BCTI failed to *452 accommodate an alleged disability in violation of RCW 49.60.180(2). While the Legislature did not define "disability,"[17] it authorized the Human Rights Commission in RCW 49.60.120(3) to adopt and promulgate rules and regulations to carry out the statute's provisions. Former WAC 162-22-040, which was so promulgated, provided in relevant part:
(1) For the purpose of determining whether an unfair practice under RCW 49.60.180, 49.60.190, or 49.60.200 has occurred:
(a) A condition is a "sensory, mental, or physical handicap" if it is an abnormality and is a reason why the person having the condition did not get or keep the job in question.... In other words, for enforcement purposes a person will be considered to be handicapped by a sensory, mental, or physical condition if he or she is discriminated against because of the condition and the condition is abnormal.
(b) "The presence of a sensory, mental, or physical handicap" includes, but is not limited to, circumstances where a sensory, mental, or physical condition:
(i) Is medically cognizable or diagnosable;
(ii) Exists as a record or history; or
(iii) Is perceived to exist, whether or not it exists in fact.
Former WAC 162-22-040(1) (1975), repealed by St. Reg. XX-XX-XXX (Aug. 12,1999).[18]
This court first applied this definition in Phillips v. City of Seattle, 111 Wash.2d 903, 906-08, 766 P.2d 1099 (1989). Four years later, we noted that its "circular" nature had proved "problematic," since it "requires a factual finding of discrimination because of the condition in order to determine whether the condition is a [`disability'] in the first place." Doe v. Boeing Co., 121 Wash.2d 8, 15, 846 P.2d 531 (1993) (citing Phillips, 111 Wash.2d at 906-08, 766 P.2d 1099); see also Fell v. Spokane Transit Auth., 128 Wash.2d 618, 637 n. 23, 911 P.2d 1319 (1996) (finding the commission's definition "curious," "circular," and "hardly crystal-like in its clarity").[19] In Pulcino v. Fed. Express Corp., 141 Wash.2d 629, 641, 9 P.3d 787 (2000), we found the commission's definition "unworkable" in the context of analyzing reasonable accommodation claims and were forced to employ an alternative definition of "disability," requiring that an allegedly disabled plaintiff establish only "that (1) he or she has/had a sensory, mental, or physical abnormality and (2) such abnormality has/ had a substantially limiting effect upon the individual's ability to perform his or her job."
To establish a prima facie case of failure to reasonably accommodate a disability under our case law, a plaintiff must show that (1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) the employee was qualified to perform the *453 essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality. See Pulcino, 141 Wash.2d at 643, 9 P.3d 787; MacSuga v. County of Spokane, 97 Wash.App. 435, 442, 983 P.2d 1167 (1999), review denied, 140 Wash.2d 1008, 999 P.2d 1259 (2000); Martini v. Boeing Co., 88 Wash. App. 442, 458, 945 P.2d 248 (1997), aff'd, 137 Wash.2d 357, 971 P.2d 45 (1999); Goodman v. Boeing Co., 127 Wash.2d 401, 408, 899 P.2d 1265 (1995); Hume, 124 Wash.2d at 670, 880 P.2d 988; Doe, 121 Wash.2d at 18, 846 P.2d 531; Dean v. Mun. of Metro. Seattle, 104 Wash.2d 627, 639, 708 P.2d 393 (1985). Whether or not such an accommodation was feasible, or reasonable, is the subject of the remaining two McDonnell Douglas intermediate burdens in such cases. Pulcino, 141 Wash.2d at 643, 9 P.3d 787 (citing MacSuga, 97 Wash.App. at 442, 983 P.2d 1167).
Here, there is no evidence that BCTI failed to undertake any measure that was medically necessary to reasonably accommodate Hill's physical abnormality. Indeed, the uncontested medical expert testimony was that Hill's asthmatic condition did not make a transfer to BCTI's Southcenter office "medically necessary." Clerk's Papers at 220, 222-23. Washington law does not require employers to provide disabled persons with medically unnecessary accommodations. Pulcino, 141 Wash.2d at 643, 9 P.3d 787; Doe, 121 Wash.2d at 19, 846 P.2d 531. Since the record contains insufficient evidence to make out even a prima facie case of failure to reasonably accommodate a disability, the trial court was correct to adjudicate Hill's disability discrimination claim as a matter of law.[20]

CONCLUSION
Adopting a "hybrid-pretext" interpretation of the United States Supreme Court's third McDonnell Douglas intermediate burden for purposes of state law, we vacate the Court of Appeals' opinion to the extent that it relies on a "pretext-plus" standard. We affirm the Court of Appeals' rulings on different grounds and remand to the trial court for entry of a judgment consistent with this opinion.
ALEXANDER, C.J., SMITH, MADSEN, SANDERS, IRELAND, JJ., GUY, J.P.T., concur.
*454 TALMADGE, J.[*] (concurring in part, dissenting in part).
While I agree with the majority's disposition of Eleanor Hill's disability claim under chapter 49.60 RCW, the Washington Law Against Discrimination (WLAD), I cannot so readily agree with the handling of her age-based discrimination claim. I would affirm the jury's $116,000 verdict for Hill because the "pretext-only" standard applies to claims under WLAD, making the issue of age discrimination in this case one for the jury.
The majority clearly articulates the facts of this case and describes the nature of the evidentiary burden-shifting protocol we have adopted for discrimination claims under WLAD. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Kastanis v. Educ. Employees Credit Union, 122 Wash.2d 483, 859 P.2d 26, 865 P.2d 507 (1993). The majority chooses to adopt the United State Supreme Court's most recent refinement of the protocol on the question of pretext. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).
But we are dealing today with the interpretation of Washington law, chapter 49.60 RCW, not federal law. While the federal case law is persuasive authority for our interpretation of Washington's anti-discrimination law, it is not controlling. Martini v. Boeing Co., 137 Wash.2d 357, 363, 971 P.2d 45 (1999); Mackay v. Acorn Custom Cabinetry, Inc., 127 Wash.2d 302, 310, 898 P.2d 284 (1995). This is particularly true where Washington case law has adopted the pretext-only standard and the Legislature has not seen fit to change that interpretation. Soproni v. Polygon Apartments, 137 Wash.2d 319, 327, 971 P.2d 500 (1999) (legislative acquiescence in judicial interpretation of statute).
We adopted the pretext-only standard in Fell v. Spokane Transit Authority, 128 Wash.2d 618, 911 P.2d 1319 (1996), where we noted a plaintiff may establish pretext either by showing the termination decision more likely than not was motivated by discrimination or "the employer's reasons for the allegedly discriminatory action are unworthy of credence[.]" Id. at 643 n. 32, 911 P.2d 1319. We further stated: "The question of pretext is generally a question for the trier of fact when there are competing inferences of discrimination in a case." Id. at 642, 911 P.2d 1319.
Similarly, in Sellsted v. Washington Mutual Savings Bank, 69 Wash.App. 852, 851 P.2d 716, review denied, 122 Wash.2d 1018, 863 P.2d 1352 (1993), a case we cited with approval in Fell, the Court of Appeals reversed and remanded the trial court's summary judgment for the defendant because, once a plaintiff in a discrimination case presents evidence of a prima facie case and the employer proffers nondiscriminatory reasons for the discharge, the plaintiff may survive summary judgment by providing evidence that the employer's reasons are unworthy of belief or are otherwise a pretext for a discriminatory purpose; to meet this burden, the plaintiff "is not required to produce evidence beyond that already offered to establish a prima facie case." Sellsted, 69 Wash.App. at 859-60, 851 P.2d 716. The court determined the plaintiffs "evidence establishing a prima facie case and his evidence of pretext together were sufficient to create a genuine issue of material fact as to the reason for his discharge." Id. at 861, 851 P.2d 716. As the court explained, where "the record contains `reasonable but competing inferences of ... discrimination' because the employer's reasons have been called into question both by the conflicts among the reasons themselves and by evidence rebutting their accuracy or believability, `it is the jury's task to choose between such inferences.'" Id. at 862-63, 851 P.2d 716 (quoting Carle v. McChord Credit Union, 65 Wash.App. 93, 102, 827 P.2d 1070 (1992)). "If the factfinder determines that the proffered reasons ... are not credible, the presumption of an impermissible consideration ... would permit the conclusion that age was a determining factor." Sellsted, 69 Wash.App. at 864, 851 P.2d 716. Sellsted's rationale is still compelling.
*455 A final reason for restraining the pretext-only standard is rooted in public policy. The WLAD must be liberally construed to eliminate unlawful discrimination. RCW 49.60.020; Franklin County Sheriffs Office v. Sellers, 97 Wash.2d 317, 335, 646 P.2d 113 (1982). The pretext-only standard better effectuates the statutory purpose. When all is said and done, if an employee presents a prima facie case of discrimination and there is evidence the employer's allegedly legitimate reason for its conduct was mere pretext for a discriminatory purpose, the trier of fact should decide, as it did here, if age or any other statutorily protected characteristic was a substantial factor in the employer's adverse actions against the employee.
I would affirm the jury's verdict for age discrimination under the WLAD.
JOHNSON, J., concurs.
NOTES
[1] Hill also charged that she was fired in retaliation for filing a workers' compensation claim with the Department of Labor and Industries, but she later voluntarily withdrew that claim.
[2] Since facts will vary from case to case, the United States Supreme Court noted that "the specification above of the prima facie proof required from [plaintiff] is not necessarily applicable in every respect to differing factual situations." McDonnell Douglas, 411 U.S. at 802 n. 13, 93 S.Ct. 1817.
[3] However, the prima facie evidence and all inferences properly drawn therefrom remain. See Reeves, 530 U.S. at 143, 120 S.Ct. at 2106, (citing Burdine, 450 U.S. at 255 n. 10, 101 S.Ct. 1089).
[4] At issue in St. Mary's was whether disbelief of the proffered explanation "mandates a finding for the plaintiff." 509 U.S. at 504, 113 S.Ct. 2742 (emphasis added). As the Court itself has written, St. Mary's stands for the proposition that "the factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not compel judgment for the plaintiff." Reeves, 530 U.S. at 146, 120 S.Ct. at 2108 (emphasis added) (citing St. Mary's, 509 U.S. at 511, 113 S.Ct. 2742).
[5] According to Reeves, the "pretext-only" position was adopted by the Third, Sixth, Seventh, Eighth, Tenth and Eleventh federal circuits, while the First, Second, Fourth, and Fifth circuits had embraced the "pretext-plus" position, and the District of Columbia Circuit had taken a "hybrid-pretext" position. 530 U.S. at 138-42, 120 S.Ct. at 2104-05; cf. Hill, 97 Wash.App. at 664 n. 9, 986 P.2d 137.
[6] The "factfinder's disbelief of the reasons put forward by the [employer] ... may, together with the elements of the prima facie case, suffice to show intentional discrimination," and thus, in appropriate cases, "will permit the trier of fact to infer the ultimate fact of intentional discrimination." St. Mary's, 509 U.S. at 511, 113 S.Ct. 2742 (first emphasis added). But "[w]hether the defendant was in fact motivated by discrimination is of course for the finder of fact to decide." Reeves, 530 U.S. at 154, 120 S.Ct. at 2112 (Ginsburg, J., concurring).
[7] The Washington Employment Lawyers Association (WELA) argues that trial judges should never be permitted to second-guess jury verdicts in employment discrimination cases. WELA Amicus Br. at 1-2. We disagree. Once the intermediate McDonnell Douglas evidentiary burdens have been satisfied and the matter is submitted to a trier of fact for resolution, whether the plaintiff has met his or her ultimate burden of proof is subject to the same CR 50 analysis as in any other case. Reeves, 530 U.S. at 148, 120 S.Ct. at 2109.
[8] As Justice Ginsburg comments in Reeves, "the ultimate question of liability ordinarily should not be taken from the jury once the plaintiff has introduced the two categories of evidence described above," namely, a McDonnell Douglas prima facie case and "evidence from which a rational factfinder could conclude that the employer's proffered explanation for its actions was false." Reeves, 530 U.S. at 154, 120 S.Ct. at 2112 (Ginsburg, J., concurring) (emphasis added). Similarly, we held in Fell v. Spokane Transit Authority, 128 Wash.2d 618, 911 P.2d 1319 (1996), that "[t]he question of pretext is generally a question for the trier of fact when there are competing inferences of discrimination in a case." Id. at 642, 911 P.2d 1319. The qualifying adverb"generally"reflects an understanding that such would not be true in every case. Cf. dissent at 454.
[9] Because the McDonnell Douglas burden-shifting framework was designed to provide the trier of fact with both sides' conflicting explanations for the employment action at issue, once a trial court concludes that an employment discrimination claim cannot be resolved as a matter of law short of a trial, no directed verdict should issue before both parties' witnesses have been duly examined and cross-examined and both parties have set forth their evidence. Considerations of judicial economy would therefore generally dictate that, once a jury is seated in a case involving the McDonnell Douglas framework, a trial court refrain from ruling on CR 50 motions until after a jury verdict is returned. See generally Hickman v. Allen, 217 Ga.App. 701, 703-04, 458 S.E.2d 883, 886 (1995) ("Whenever a party is entitled to a directed verdict, it should be granted ..., but when the erroneous grant of directed verdict to a defendant will require a new trial, and particularly where there is extensive evidence and debate as in this case, it is a wise exercise in judicial economy to let the jury decide the matter and then to grant a judgment n.o.v., rather than court the prospect of trying the entire matter again as to that defendant, with resulting prejudice to all parties."); Rhein v. ADT Auto., Inc., 122 N.M. 646, 930 P.2d 783, 790 n. 4 (1996); N.H. Ins. Co. v. Sid Smith & Assocs., Inc., 610 So.2d 340, 344 (Miss. 1992); Therrell v. Georgia Marble Holdings Corp., 960 F.2d 1555 (11th Cir. 1992); Colonial Lincoln-Mercury, Inc. v. Musgrave, 749 F.2d 1092, 1098 n. 3 (4th Cir.1984); United States v. Vahlco Corp., 720 F.2d 885, 889 (5th Cir. 1983); 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2533, at 319 (1995) ("[A]ppellate courts have repeatedly said that it usually is desirable to take a verdict, and then pass on the sufficiency of the evidence on a post-verdict motion.").
[10] The United States Supreme Court has ruled that replacement by someone outside the protected age group and "insignificantly younger" is not a proper element of a McDonnell Douglas prima facie case of age discrimination, since a 40-year-old employee being replaced by a 39-year-old gives rise to no inference of age discrimination whatsoever. O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312-13, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). We agree.
[11] The dissent argues that the trial court was correct to deny BCTI's motion for a judgment notwithstanding the verdict on Hill's age discrimination claim, because, it claims, the "pretext-only" standard was adopted in Fell v. Spokane Transit Authority, 128 Wash.2d 618, 911 P.2d 1319 (1996), and Sellsted v. Washington Mutual Savings Bank, 69 Wash.App. 852, 851 P.2d 716, review denied, 122 Wash.2d 1018, 863 P.2d 1352 (1993). See dissent at 2-3. We disagree. In both cases, the trial courts had improperly granted summary judgment motions despite the existence of genuine issues of material fact. Fell, 128 Wash.2d at 622, 911 P.2d 1319; Sellsted, 69 Wash.App. at 853, 851 P.2d 716. The JNOV motion at issue here, however, turns on a different question: the reasonableness of a jury verdict. We see no reason why Washington courts should effectively "`insulate an entire category of employment discrimination cases from [JNOV] review'" or "`"treat discrimination differently from other ultimate questions of fact."'" Reeves, 530 U.S. at 148, 120 S.Ct. at 2109 (quoting St. Mary's, 509 U.S. at 524, 113 S.Ct. 2742 (quoting Aikens, 460 U.S. at 716, 103 S.Ct. 1478)).
[12] See also Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir.1996); Buhrmaster v. Overnite Transp. Co., 61 F.3d 461, 464 (6th Cir.1995); Tyndall v. Nat'l Educ. Ctr., 31 F.3d 209, 214-15 (4th Cir. 1994); Rand v. C.F. Indus., Inc., 42 F.3d 1139 (7th Cir.1994); Proud v. Stone, 945 F.2d 796 (4th Cir.1991). Hill questions whether the exact person who hired heri.e., Potteralso made the decision to fire her. The record indicates that Potter and his supervisor Clark participated in that decision. Since the same decision makers had authority over both Hill's hiring and her firing shortly thereafter, a strong "same decision maker inference" exists, even if it was Potter's supervisor Clark rather than Potter himself who ultimately decided to fire her.
[13] Unless the strength of this inference is fully recognized, employers could be discouraged from hiring the very persons the Legislature intended the Law Against Discrimination to protect, fearful that doing so would make them more vulnerable, rather than less, to legal claims of unlawful discriminatory animus if legitimate business reasons later required discharging such a person.
[14] Clark and Potter testified that they fired Hill after concluding that she had discussed work-related financial arrangements with Johnson, a BCTI co-workerin violation of the policy Hill had signed, that it was "grounds for immediate and automatic termination" for BCTI employees to "discuss financial arrangements with any other employee[,] i.e. current salary, raises, problems with hours or commissions, and/or benefits," Def.'s Ex. 29and had then lied to them about the matter. Hill denied that she had violated the policy, but ultimately failed to show that it was in any way unreasonable for BCTI officials to conclude that she had. Even if the jury believed Hill's testimony, no "suspicion of mendacity" on BCTI's part was thereby established. See Aka, 156 F.3d at 1293 (citing St. Mary's, 509 U.S. at 511, 113 S.Ct. 2742). It is not unlawful for an at-will employee to be discharged because he or she is perceived to have misbehaved, see Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 223, 685 P.2d 1081 (1984) ("Generally, an employment contract, indefinite as to duration, is terminable at will by either the employee or employer."), and courts must not be used as a forum for appealing lawful employment decisions simply because employees disagree with them.
[15] We therefore do not reach BCTI's claim that it was reversible error for the trial court to have instructed the jury to determine whether unlawful animus was a "substantial or significant" factor in Hill's discharge. See Mackay, 127 Wash.2d at 311, 898 P.2d 284.
[16] CR 50(a)(1) provides, "If, during a trial by jury, a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find or have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against the party on any claim, counterclaim, cross claim, or third party claim that cannot under the controlling law be maintained without a favorable finding on that issue."
[17] Older cases and older versions of the relevant statutes and WAC provisions use the term "handicap." We now use "disability." For legal purposes, the terms are interchangeable.
[18] The commission's definition of "disability" is currently found at WAC 162-22-020.
[19] Where possible, courts must "give the Commission's definition of [`disability'] for unfair practice claims great weight since it is the construction of the statute by the administrative body whose duty it is to administer its terms." Doe, 121 Wash.2d at 15, 846 P.2d 531. However, the circular nature of the Commission's current definition has greatly troubled us in the context of evaluating prima facie cases of disability discrimination under McDonnell Douglas, because it makes it impossible for plaintiffs to satisfy their first intermediate evidentiary burden without simultaneously producing evidence in support of their ultimate allegation, namely, that the adverse action occurred because of that alleged "disability." See, e.g., Hume, 124 Wash.2d at 670, 880 P.2d 988; Lords v. N. Auto. Corp., 75 Wash.App. 589, 601, 881 P.2d 256 (1994); Michelsen v. Boeing Co., 63 Wash.App. 917, 921, 826 P.2d 214 (1991); Simmerman v. U-Haul Co., 57 Wash.App. 682, 687, 789 P.2d 763 (1990). There is no principled reason why it should be fundamentally harder to establish prima facie cases of disability discrimination under RCW 49.60.180 than prima facie cases of any other form of discrimination made unlawful by that same statute. However, we lack an opportunity here to rule on whether the Pulcino definition should to be used to evaluate prima facie cases in all disability discrimination cases.
[20] Hill contends that her disability-based claim had two parts. RP at 245-46. As articulated, though, both parts were based on a reasonable accommodation theory of liability, not wrongful discharge due to disparate treatment. The only disability discrimination "burden of proof" jury instruction that Hill submitted was "Reasonable AccommodationBurden of Proof" (Washington Pattern Instruction (WPI) 330.33), Clerk's Papers at 72, along with instructions on "Definition of Disability" (WPI 330.32); "Reasonable Accommodation Definition" (WPI 330.34); "Reasonable AccommodationEmployer Notice and Employee's Duty to Cooperate" (WPI 330.35); and "Undue Hardship" (WPI 330.36). Clerk's Papers at 71-75. Hill omitted the "burden of proof" jury instruction entitled "Disability DiscriminationTreatmentBurden of Proof" (WPI 330.31), setting forth the standard elements of a disability-based wrongful discharge claim. Only after the directed verdict on Hill's reasonable accommodation claim was granted did she articulate a different theory of disability discrimination. A party is bound by the basic legal theories pleaded and argued before a verdict is rendered. Browne v. Cassidy. 46 Wash.App. 267, 270, 728 P.2d 1388 (1986). Once a claim has been adjudicated, parties cannot ordinarily have judgments reconsidered based on legal theories not previously raised. Teratron Gen. v. Inst. Inv. Trust. 18 Wash.App. 481, 488-89, 569 P.2d 1198 (1977). In any event, the evidence fails to support even a prima facie case of wrongful discharge, which would require evidence that Hill (1) had a sensory, mental, or physical abnormality that substantially limited her ability to do the job; (2) was discharged by the defendant; (3) was qualified to perform the essential functions of the job; and (4) was replaced by someone whose ability to do the job was not similarly limited. Cf. Lords, 75 Wash.App. at 601, 881 P.2d 256. Probably because her disability claim was based on a reasonable accommodation theory, Hill was unable to provide any citation to the trial record to support her bare assertion on appeal that her replacements at BCTI "were outside the protected group." Br. of Resp't Hill at 41. Bare assertions in appellate briefs do not constitute evidence. See Major Prods. Co. v. N.W. Harvest Prods., Inc., 96 Wash.App. 405, 410-11, 979 P.2d 905 (1999).
[*] Justice Philip Talmadge is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a).