James JENSEN, Plaintiff,

v.

ASSOCIATED MATERIALS,
LLC, Defendant.

No. C12–0202RSL.

United States District Court,
W.D. Washington,
at Seattle.

Nov. 7, 2013.

Alexander Joseph Higgins, Matthew J. Bean, Bean Porter Hawkins PLLC, Seattle, WA, for Plaintiff.

James B. Stoetzer, Laura T. Morse, Lane Powell PC, Seattle, WA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROBERT S. LASNIK, District Judge.

This matter comes before the Court on "Defendant's Motion for Summary Judgment" on plaintiff's claim of age discrimination under the Washington Law Against Discrimination ("WLAD"), RCW 49.60 et seq. Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact that would preclude the entry of judgment as a matter of law. *L.A. Printex Indus., Inc. v. Aeropostale, Inc.,* 676 F.3d 841, 846 (9th Cir.2012). The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)) and identifying those portions of the materials in the record that show the absence of a genuine issue of material fact (Fed. R.Civ.P. 56(c)(1)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to identify specific factual disputes that must be resolved at trial. *Hexcel Corp. v. Ineos Polymers, Inc.,* 681 F.3d 1055, 1059 (9th Cir.2012). The mere existence of a scintilla of evidence in support of the non-moving party's position will not preclude summary judgment, however, unless a reasonable jury viewing the evidence in the light most favorable to the non-moving party could return a verdict in its favor. *U.S. v. Arango,* 670 F.3d 988, 992 (9th Cir.2012).

Taking the evidence presented in the light most favorable to plaintiff[1] and having heard the arguments of counsel, the Court finds as follows:

■ The WLAD makes it an unfair practice for an employer "to discharge or bar any person from employment because of age ...." RCW 49.60.180(2). To establish a *prima facie* case of age discrimination under state law, plaintiff must demonstrate that he (a) is within the statutorily protected age group, (b) was discharged, (c) was satisfactorily performing his job, and (d) was replaced by a younger person. *Rice v. Offshore Sys., Inc.*, 167 Wash.App. 77, 88, 272 P.3d 865 (2012).[2] Plaintiff's initial burden is to show that the employer's conduct, if left unexplained, gives rise to an inference that it is more likely than not that such actions were "based on a discriminatory criterion illegal under the Act." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). *See also Bodett v. CoxCom, Inc.*, 366 F.3d 736, 743 (9th Cir.2004). Plaintiff's burden in establishing a *prima facie* case is minimal and need only give rise to an inference of unlawful discrimination. If the elements of the *prima facie* showing are satisfied, plaintiff is entitled to a presumption that his employer unlawfully discriminated against him. *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002).

■ Once a *prima facie* case has been presented, the burden shifts to defendant "to articulate a legitimate, nondiscriminatory reason" for the adverse employment decision. *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 658 (9th Cir. 2002). If defendant is able to rebut the presumption of discrimination raised by the *prima facie* showing, plaintiff may avoid summary judgment by producing enough evidence to allow a reasonable factfinder to conclude that "defendant's articulated reasons (1) had no basis in fact, (2) were not really motivating factors for the decision, (3) were not temporally connected to the adverse employment action, or (4) were not motivating factors in employment decisions for other employees in the same circumstances." *Scrivener v. Clark College*, 176 Wash.App. 405, 411–13, 309 P.3d 613 (2013).[3]

1. The parties agree that plaintiff was not terminated as a result of his customer service problems and that he is not asserting any claims related to the reassignment of accounts that occurred in the first half of 2009. The Court therefore need not determine the admissibility of plaintiff's narrative regarding those events.

   Plaintiff's motion to strike arguments raised in reply (Dkt. # 24) is DENIED. Defendant was not required to anticipate plaintiff's pretext arguments in its motion and properly responded to the proffered evidence in reply.

2. Washington courts have adopted the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to evaluate claims of discrimination that are based on circumstantial, rather than direct, evidence of discriminatory motive. *Fulton v. State*, 169 Wash.App. 137, 148 at n. 17, 279 P.3d 500 (2012). Plaintiff argues that his supervisor directly manifested discriminatory intent when he attributed a mix up in names to his "old brain" in December 2008 and asked plaintiff about his retirement plans in June 2009. Both of these remarks are ambiguous as to Hatfield's state of mind, and neither is directly related to Hatfield's motivation in September 2009. The *McDonnell Douglas* analysis therefore applies.

3. Under federal law, plaintiffs can avoid judgment and overcome defendants' legitimate nondiscriminatory reason for their actions by presenting evidence that either (1) the proffered reasons for the adverse employment action were false or (2) a discriminatory reason more likely motivated the employer. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir.2008). "A plaintiff may not[, however,] defeat a defendant's motion for summary judgment merely by denying the credibility of the defendant's proffered reason for the chal-

Plaintiff has provided evidence that he falls within the protected age group (defined in RCW 49.44.090(1) as employees 40 years of age and older), that he was discharged, and that he was replaced by a younger person. Although there is significant evidence that plaintiff's direct supervisor, his Senior Vice President for Sales, and certain customers were dissatisfied with plaintiff's job performance during the last few months of his employment, the supervisor, Gary Hatfield, affirmatively decided that the performance issues did not merit termination as of July 2009. The Court will therefore assume, for purposes of this motion, that plaintiff was satisfactorily performing his job at least into July 2009. Plaintiff has raised a *prima facie* case of age discrimination.

■ In response, defendant has articulated a "legitimate, non-discriminatory reason for termination." *Grimwood v. University of Puget Sound, Inc.,* 110 Wash.2d 355, 364, 753 P.2d 517 (1988). On September 16, 2009, plaintiff sent an email to an important customer stating:

I wanted to personally apologize to you and the rest of the centex team. For more than 30 years I have prided myself and built a reputation of giving the best service to my customers. Due to a myriad of issues not the least of which attempted restructuring and others has made it challenging to say the least in providing what I have been so proud of all my working life. I take this as a failure and wanted you to know I put in great effort without the desired results. I hope there are not too many bad feelings over this and I pledge to do all I can to make the transition go smoothly.

Decl. of Laura T. Morse (Dkt. # 18), Ex. Q. The customer who received this email

thought it "reveal[ed] a disconnect between Jim Jensen's ownership and management of the account and solving the problems" and "put[ ] me in a position that I didn't feel like I had options or felt like I had to solve those problems." Decl. of Laura T. Morse (Dkt. # 18), Ex. D at 20. He contacted Hatfield to let him know about the email and his concerns. Decl. of Laura T. Morse (Dkt. # 18), Ex. C at 126. Hatfield determined that the email was grounds for dismissal—a decision with which human resources and his Senior Vice President for Sales concurred—and fired plaintiff. Decl. of Laura T. Morse (Dkt. # 18), Ex. C at 131–33; Ex. O at 80–81.

■ Because the presumption of discrimination raised by the *prima facie* showing has "fulfilled its role of forcing the defendant to come forward with some response, [the presumption] simply drops out of the picture" at this point in the analysis. *Hill v. BCTI Income Fund–I,* 144 Wash.2d 172, 23 P.3d 440 (2001) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)), overruled on other grounds, *McClarty v. Totem Elec.,* 157 Wash.2d 214, 137 P.3d 844 (2006). In order to avoid summary judgment, plaintiff must present enough evidence to allow a reasonable factfinder to conclude that the employer's non-discriminatory justification for terminating his employment was merely a pretext for age discrimination. Plaintiff is not necessarily required to produce evidence beyond that which established the *prima facie* case: if, in light of all of the evidence, there is a genuine issue of material fact regarding the employer's motivation, the issue is one for the jury to decide. *Rice,* 167 Wash. App. at 89, 272 P.3d 865.

lenged employment action .... Nor may a plaintiff create a genuine issue of material fact by relying solely on the plaintiff's subjective belief that the challenged employment

action was unnecessary or unwarranted." *Cornwell v. Electra Cent. Credit Union,* 439 F.3d 1018, 1028 n. 6 (9th Cir.2006) (citations omitted).

Plaintiff argues that his September 2009 email was simply an excuse defendant used to terminate his employment and that the real reason was his age. The basic time line of events does not support plaintiff's theory: had Hatfield decided plaintiff was too old and been looking for an excuse to fire him, there was a series of unsatisfactory customer interactions and a blown marketing opportunity (coupled with instructions to terminate plaintiff) that would have provided ample justification for termination months earlier. In support of his pretext argument, plaintiff points out that (a) other Associated Materials employees had apologized to customers and not been terminated and (b) Hatfield made ageist comments evincing his true motivations.

Plaintiff's September 2009 email is fundamentally different than any other apology in the record. *See* Decl. of James Jensen (Dkt. # 20–2), Exs. I, J, U, and V. Rather than apologize as a representative of the company, plaintiff chose to speak on his own behalf, clearly seeking to protect and/or rehabilitate his own reputation while blaming the company for any errors and shortcomings. The email was not prompted by the type of customer complaint or emergent issue that prompted the other communications presented to the Court. Because no acknowledgment of error or apology was compelled by the situation, plaintiff's email reads as nothing more than a gratuitous lament about the difficulties of working within Associated Materials' restructured system. Unlike the other apologies in the record, plaintiff does not thank Centex for its business, compliment it as a loyal business partner, or otherwise attempt to build on an existing relationship. In fact, with the excep-

tion of the last clause in which plaintiff pledges to help shift defendant's business to Everclear, plaintiff offers nothing constructive or positive at all: there is no plan of corrective action or promise that Associated Materials will improve or make the perceived problem right.

Every person who reviewed the email—other than plaintiff—thought it was inappropriate and not in Associated Materials' best interests. Eric Nordling, the Centex representative who received the email, thought it presented "a theme of apology and defeatism" and did not comport with his expectations of an account manager.[4] Errata to the Decl. of Laura T. Morse (Dkt. # 26), Ex. D at 22–23. He was so unhappy with the communication that he called plaintiff's boss, who had not been copied on the email. When Hatfield saw the email, he thought it was grounds for dismissal. Decl. of Alex J. Higgins (Dkt. # 20–1), Ex. D at 130–31. The human resources folks, Marsha Larson and John Hausmesser, were not happy about the email and had the impression that plaintiff "was throwing [Associated Materials] under the bus to the customer." Decl. of Alex J. Higgins (Dkt. # 20–1), Ex. D at 131; Decl. of Laura T. Morse (Dkt. # 18), Ex. O at 80–81. David King, Associated Materials' Senior Vice President for Sales, took issue with the fact that plaintiff had sent the apology directly to the customer without copying Hatfield and interpreted the email as "basically saying that, hey, the company's not—not living up to their obligation. I'm doing all I can. This is about—this is about [plaintiff], not about the business and so I would have a problem with that." Decl. of Laura T. Morse (Dkt. # 18), Ex. B at 45. There is no

---

4. "I mean that my expectation of an account manager is they—if there's issues within that organization—within his or her organization, as an account manager, that the—that they take responsibility for solving those and pre-

senting a confident plan to me as the client that they'll solve those problems and that they've got a plan to solve those problems." Errata to the Decl. of Laura T. Morse (Dkt. # 26), Ex. D at 22.

evidence that any other apology made to a customer, whether written or oral, was similar to that issued by plaintiff or prompted a comparable customer reaction. Plaintiff has therefore failed to show that other employees, whether inside or outside the protected class, engaged in similar conduct and were treated differently (*i.e.*, not terminated). The fact that other employees who issued more appropriate apologies for Associated Materials' customer service problems were not fired does not in any way support plaintiff's claim that his age was a substantial factor in his termination.

Plaintiff attempts to raise an inference of discriminatory motive with evidence that Hatfield attributed a mix up that he made in names to his "old brain" in December 2008 and asked plaintiff about his retirement plans in June 2009.[5] The "old brain" comment was made in an email to King months before Hatfield began supervising plaintiff. The comment had nothing to do with plaintiff and very little to do with Hatfield: the surrounding context leaves little doubt that Hatfield was simply excusing an error, not expressing doubts about his cognitive abilities due to age (or any other reason). Such self-denigrating statements, having nothing to do with plaintiff's qualifications as an employee or the adverse employment action at issue, are simply stray remarks that fail to raise an inference of discriminatory motive. *Griffith v. Schnitzer Steel Indus., Inc.*, 128 Wash.App. 438, 458, 115 P.3d 1065 (2005); *Domingo v. Boeing Emps. Credit Union*, 124 Wash.App. 71, 90, 98 P.3d 1222 (2004).

With regards to the inquiry regarding retirement, plaintiff appears to be arguing that there is a blanket prohibition on asking an employee whether or when he is planning to retire. There is not. In many instances, an employer has a legitimate interest in knowing ahead of time when a position will have to be filled or what cost-savings are on the horizon. *See Ray v. Tucson Old Pueblo Credit Union*, 228 Fed. Appx. 682, 683 (9th Cir.2007); *Colosi v. Electri–Flex Co.*, 965 F.2d 500, 502 (7th Cir.1992). In other instances, an employer might simply hope to avoid contentious personnel issues by suggesting that an employee consider retirement instead of attempting to correct performance problems. *See Ziegler v. Beverly Enters.– Minn., Inc.*, 133 F.3d 671, 676 (8th Cir. 1998). Both interests were likely at work here. Hatfield apparently asked plaintiff about his retirement plans a few months after they began working together and two customer calls had not gone as Hatfield had hoped. Plaintiff responded that he had no intention of retiring anytime soon. Other than the fact that the word "retirement" is generally associated with attaining a certain age, there is no indication that plaintiff felt he was being forced into retirement, that Hatfield was presenting plaintiff with a choice between retiring and being fired, that Hatfield thought plaintiff was too old to do his job, or that the exchange had anything to do with Hatfield's decision-making process three months later. Absent some indication that the proximity of retirement had a motivating influence on the decision to terminate, simply asking an employee about his retirement plans does not raise an inference that plaintiff's age is the reason he is no longer employed by Associated Materials.[6]

---

**5.** In his declaration, plaintiff mentions two other conversations in which Hatfield asked him if he were going to quit. Decl. of James Jensen (Dkt. # 20–2) at ¶ 7 and ¶ 28. In both situations, plaintiff had received bad news about his employment situation and was unhappy as a result. An inquiry regarding whether plaintiff intended to stay in light of difficulties in the workplace has nothing to do with his age and does not raise an inference of age discrimination.

**6.** In *Shelley v. Geren*, 666 F.3d 599 (9th Cir. 2012), on the other hand, members of the

After considering all of plaintiff's evidence as a whole, the Court finds that a jury could not reasonably infer that plaintiff's age was a substantial factor in Hatfield's decision to terminate plaintiff's employment. Defendant's motion for summary judgment (Dkt. # 17) is therefore GRANTED. The Clerk of Court is directed to enter judgment in favor of defendant and against plaintiff.

hiring committee requested information regarding the projected retirement dates of the applicants during the hiring process, raising an inference that the information was relevant to their decisions. No such inference would be reasonable in the circumstances presented here.