[No. 23118-6-III.  Division Three.  May 26, 2005.]

JAMES BECKER, *Appellant*, v. HARRY CASHMAN ET AL.,
*Respondents*.

80

*Richard D. Wall*, for appellant.

*Christine M. Weaver* (of *Law Office of Christine M. Weaver, P.S.*), for respondents.

¶1 SCHULTHEIS, J. — James Becker suffers from heart disease. He was terminated from his position at River City Glass, Inc., and filed suit, alleging disability discrimination and wrongful discharge, among other claims. The Spokane County superior court dismissed his complaint on summary judgment and he now appeals, contending he raised issues of fact regarding whether River City failed to accommodate his disability and whether he was fired because of that disability. We find that Mr. Becker failed to establish a prima facie case of failure to accommodate or wrongful discharge, and affirm.

## FACTS

¶2 Mr. Becker was first hired by Harry and Shelly Cashman (doing business as River City Glass, Inc.) in April 1998, when he was 48 years old. He worked as an estimator at River City, spending approximately 60 percent of his time in the office and the rest of the time visiting customers and manufacturers.

¶3 In October 1998, Mr. Becker was hospitalized and diagnosed with cardiomyopathy, a heart disease that causes

poor circulation and heart congestion. Mr. Becker's physician reportedly wrote a letter to Mr. Becker's employers in 1999 describing this heart condition and stating that Mr. Becker had difficulty going up and down stairs. The letter also indicated Mr. Becker should not engage in any strenuous activity. This letter is not included in the record on appeal and apparently was not presented to the trial court.[1]

¶4 Mr. Becker continued to work at River City until he voluntarily quit in April 2000 to take a "better job" as manager at a glass company in Bozeman, Montana. Clerk's Papers (CP) at 25. He worked at the new company only three months and then quit because the business was too small and was located at an altitude that was hard on his heart condition. While looking for new employment, he asked for and received a favorable letter of recommendation from Ms. Cashman.

¶5 In April 2001, Mr. Becker was again hired as an estimator at River City. He admits that the Cashmans knew of his health problems when they rehired him. Less than a year later, in January 2002, the Cashmans terminated Mr. Becker. According to Mr. Cashman, Mr. Becker often fell asleep at work and was unable to keep up with the work load during his second employment with River City. Additionally, Mr. Cashman stated that "numerous customers/suppliers" complained that Mr. Becker acted inappropriately toward them. CP at 54. Four letters from these customers/suppliers were supposedly attached to Mr. Cashman's affidavit, but were never included in the court record (*see* note 1 above).

¶6 Mr. Becker tells a different story. He claims he asked twice to have his desk moved from an upstairs office to the main floor of River City, but that he was "blown off" both times. CP at 34. His request for a parking space in front of the building was also reportedly ignored. According to Mr. Becker, walking from his parking space and up and down the stairs at River City was the kind of strenuous activity

---

[1] The county clerk reported to this court that none of the attachments indicated in the affidavits in the record were actually attached to the affidavits.

his doctor warned he should avoid. He claimed that after walking from his car and climbing the stairs, he needed a period of "shut down" time to bring his heart rate down. CP at 18. During this shutdown, which would last only a few minutes, he would close his eyes and meditate. On the day he was fired, asserts Mr. Becker, Mr. Cashman stated, "I don't think your health is good enough, and I'm going to let you go because of it. I don't think you're healthy enough to work here." CP at 31.

¶7 In January 2004, Mr. Becker filed a complaint against the Cashmans and River City Glass alleging breach of contract, unfair employment practices (including age and disability discrimination), wrongful discharge, and breach of an oral contract. He requested general damages for emotional and physical distress, special damages for past and future lost wages and benefits, and attorney fees. The Cashmans moved for summary judgment in March 2004. In his opposition to the motion, Mr. Becker argued only disability discrimination and wrongful discharge. The trial court granted summary judgment dismissal of the complaint on May 20, 2004.

## DISABILITY DISCRIMINATION

¶8 Mr. Becker contends summary dismissal of his complaint—specifically the disability discrimination and wrongful discharge claims—was inappropriate because he raised issues of fact regarding the Cashmans' failure to accommodate his disability and their discriminatory intent in firing him. On review of a summary judgment, we stand in the shoes of the trial court and view the pleadings, depositions, and affidavits in the light most favorable to the nonmoving party. *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 144, 94 P.3d 930 (2004). Summary judgment is appropriate if there is no real issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

¶9 Washington's Law Against Discrimination, chapter 49.60 RCW, declares that it is an unfair practice for an

employer to discharge, discriminate in conditions of employment, or refuse to hire any person on the basis of a sensory, mental, or physical disability. RCW 49.60.010, .180; *Riehl*, 152 Wn.2d at 144-45; *Roeber v. Dowty Aerospace Yakima*, 116 Wn. App. 127, 135, 64 P.3d 691, *review denied*, 150 Wn.2d 1016 (2003). An employer who fails to accommodate an employee's disability faces an accommodation claim, while an employer who discharges an employee for a discriminatory reason faces a disparate treatment claim. *Roeber*, 116 Wn. App. at 135. Mr. Becker alleges both accommodation and disparate treatment violations of chapter 49.60 RCW.

### ACCOMMODATION

¶10 "To eliminate discrimination in the workplace, state law requires employers to reasonably accommodate a disabled employee unless the accommodation would be an undue hardship on the employer." *Riehl*, 152 Wn.2d at 145. To establish a prima facie case for failure to reasonably accommodate a disability, the employee must show that (1) he or she had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) he or she was qualified to do the job; (3) he or she gave the employer notice of the abnormality and its substantial limitations; and (4) after notice, the employer failed to adopt available measures that were medically necessary to accommodate the abnormality. *Id.*; *Roeber*, 116 Wn. App. at 138-39.

¶11 Mr. Becker's cardiomyopathy is a physical abnormality. He claims that this condition substantially limited his ability to do his job as a glass estimator. Viewing the evidence in the light most favorable to Mr. Becker, we find that the periods of shutdown time that followed his exertions in walking from the parking space and climbing the stairs somewhat limited his ability to do his job. However, Mr. Becker's insistence that these shutdown periods lasted only a few minutes undermines his insis-

tence that the condition *substantially* limited his abilities. He denies the Cashmans' claim that he was sleeping on the job "continuously." CP at 54. Further, the record does not indicate that he missed work due to his medical condition, beyond the original hospitalization in October 1998. The record simply does not show that his physical abnormality substantially limited his ability to do his job. Consequently, he fails to establish the first element of a prima facie case of failure to accommodate. The trial court did not err in summarily dismissing this cause of action. *Roeber*, 116 Wn. App. at 141.

### WRONGFUL DISCHARGE

¶12 Mr. Becker next contends he was wrongfully discharged in violation of the disparate treatment provisions of RCW 49.60.180 and in violation of public policy. We first address the statutory claim.

¶13 *I. Disparate treatment.* Pursuant to RCW 49.60.180, an employer may not discriminate against an employee on the basis of disability if the employee is otherwise qualified to do the job. *Riehl*, 152 Wn.2d at 149. To survive summary judgment, the employee must show that a reasonable finder of fact could find that the employee's disability was a substantial factor motivating the employer's adverse actions. *Id.* "This is a burden of production, not persuasion, and may be proved through direct or circumstantial evidence." *Id.*

¶14 To establish a prima facie case of discharge due to disability in violation of RCW 49.60.180, the employee must produce evidence that he or she (1) was disabled, (2) was discharged, (3) was doing satisfactory work, and (4) was replaced by someone who was not disabled. *Riehl*, 152 Wn.2d at 150; *Roeber*, 116 Wn. App. at 135. Establishment of a prima facie case creates a rebuttable presumption of discrimination. *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 181, 23 P.3d 440 (2001). The burden of production then shifts to the employer to produce a

nondiscriminatory reason for the employee's discharge. *Id.* If the employer meets this burden, the presumption of unlawful discrimination is rebutted and the burden shifts back to the employee to show that the employer's stated reason for the discharge was in fact pretext. *Id.* at 182.

¶15 As discussed above, Mr. Becker has established the fact of his disability. The record also shows that he was discharged. And the fact that the Cashmans rehired him supports his contention that he was doing satisfactory work (although this assertion is disputed by the Cashmans). Mr. Becker testified he was replaced by a healthy man he trained for two months before he was fired. On these facts, he meets his burden of producing evidence to support a prima facie case of disparate treatment discrimination.

¶16 The burden then shifts to the Cashmans to show that they had a nondiscriminatory reason to terminate Mr. Becker. Although the Cashmans kept no formal records of employee reviews or disciplinary actions, they contend several clients and manufacturers' representatives complained about Mr. Becker's inappropriate behavior toward them. Mr. Becker admitted in his deposition testimony that a manufacturer's representative complained to him about his lack of respect toward the manufacturer's employees. He also agreed that he could be rude and demanding if orders were not met and that he yelled at a manufacturer's representative once. This evidence meets the Cashmans' burden of producing a nondiscriminatory reason for Mr. Becker's discharge.

¶17 Ultimately, Mr. Becker cannot carry his final burden of showing that the Cashmans' stated reason for his discharge was pretext. As noted in *Hill*, 144 Wn.2d at 189, "[w]hen someone is both hired and fired by the same decision makers within a relatively short period of time, there is a strong inference that he or she was *not* discharged because of any attribute the decision makers were aware of at the time of hiring." This inference is even stronger when, as in this case, the employee was *rehired* and fired by the same decision maker, who knew at the time of rehiring that

the employee had a medical disability. After all, "if the employer is opposed to employing persons with a certain attribute, why would the employer have hired such a person in the first place?" *Id.* at 189-90. Without this inference, employers could be discouraged from hiring disabled people, "fearful that doing so would make [the employers] *more* vulnerable, rather than less, to legal claims of unlawful discriminatory animus if legitimate business reasons later required discharging such a person." *Id.* at 190 n.13.

¶18 Mr. Becker claims he was fired because of his medical disability. Yet he was rehired after he had worked for the Cashmans with that disability, had quit voluntarily, and had sought employment again with the same disability. We find as a matter of law that no trier of fact could reasonably conclude that his disability was a substantial factor in the Cashmans' decision to fire him. *See id.* at 190.

■■ ¶19 *II. Wrongful discharge in violation of public policy.* The tort of wrongful discharge in violation of public policy is a narrow exception to Washington's employment-at-will doctrine. *Sedlacek v. Hillis*, 145 Wn.2d 379, 385, 36 P.3d 1014 (2001). To create a prima facie case, the plaintiff must first prove the existence of a clear, relevant public policy. *Id.*; *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 941, 913 P.2d 377 (1996). Second, the plaintiff must show that discouraging his or her conduct would jeopardize that public policy. *Gardner*, 128 Wn.2d at 941. Third, the public-policy-linked conduct must have caused the dismissal. *Id.* And fourth, the employer must not have an overriding justification for the dismissal. *Id.*

■ ¶20 RCW 49.60.180 of Washington's Law Against Discrimination establishes a clear mandate of public policy. *Sedlacek*, 145 Wn.2d at 385-86. Firing someone who is a member of the class protected by RCW 49.60.180 would jeopardize the public policy against discrimination. However, as in the statutory disparate treatment claim, Mr. Becker cannot show that his disability caused his dis-

charge. Consequently, he fails to support a prima facie case of wrongful discharge in violation of public policy.

¶21 Because Mr. Becker does not establish prima facie cases of failure to accommodate, disparate treatment, or wrongful discharge in violation of public policy, the trial court did not err in finding that judgment for the Cashmans was justified as a matter of law. Summary dismissal of his complaint was therefore proper.

¶22 Affirmed.

SWEENEY, A.C.J., and BROWN, J., concur.