IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

|  |  |  |
|---|---|---|
| LISA BUHR, | ) | |
| | ) | No. 30355-1-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEWART TITLE OF SPOKANE, LLC; | ) | UNPUBLISHED OPINION |
| and STEWART TITLE COMPANY, | ) | |
| | ) | |
| Respondents. | ) | |

SIDDOWAY, J. — Lisa Buhr sued her former employer, Stewart Title of Spokane

LLC (Stewart Spokane), and its 51 percent shareholder, Stewart Title Company (Stewart

Co.), for disability discrimination and related claims. Her claims against Stewart Co. and

her reasonable accommodation claim against Stewart Spokane were dismissed on

summary judgment following the completion of discovery. Her remaining claims were

dismissed following a jury verdict in Stewart Spokane's favor.

In this appeal,[1] she challenges the trial court's summary judgment dismissal of her

reasonable accommodation claim against Stewart Spokane, evidentiary rulings made and

---

[1] Ms. Buhr's appeal of the trial court's dismissal of her claims against Stewart Co. was filed before this appeal and is addressed by our opinion in that matter, *Buhr v. Stewart Title of Spokane LLC*, No. 30164-8-III (Wash. Ct. App. Aug. 1, 2013).

jury instructions given at trial, and a sanction imposed for a discovery violation. We find

no error or abuse of discovery and affirm.

FACTS AND PROCEDURAL BACKGROUND

All of the issues raised in this appeal require that we review the evidence in the

light most favorable to Ms. Buhr and, in the case of the dismissal of one of her claims by

summary judgment, that we limit ourselves to the summary judgment record. We

therefore rely on the summary judgment record, largely on excerpts from Ms. Buhr's

deposition. We view any disputed facts in the light most favorable to Ms. Buhr.

Lisa Buhr is disabled. As a young girl, she was diagnosed with a form of cancer

the treatment for which caused a deformity in her left eye and stunted its growth. Her

vision worsened and required surgery in 2001 that removed a large portion of her eye and

replaced it with a prosthetic. The prosthetic and complications from it cause her

migraines and extreme dryness and irritation to her eyelid. Those, in turn, have resulted

in depression, tension, anxiety, trouble sleeping, and social isolation. These issues have

remained constant over her lifetime.

As of June 2006, Ms. Buhr had worked in the title insurance business as a

customer service representative for approximately eight years. She resigned her position

at First American Title Company by choice when the company was going through some

department changes. She was promptly contacted by Anthony Carollo, the president of

Stewart Spokane, who explained that he had heard about her from his employees who

knew her from First American and spoke highly of her work. Ms. Buhr agreed to interview with Mr. Carollo for a possible position at Stewart Spokane. During the interview she informed Mr. Carollo of her medical issues. She explained that she would quickly use and then exceed the 12 days that Stewart Spokane afforded for sick leave. She specifically told him that if there was a problem with that, not to hire her. Mr. Carollo said he would be able to provide that flexibility and offered her a full-time position. She accepted it.

Stewart Spokane accommodated her need for an unusual number of unpredictable work absences. For the first year of her employment, it also allowed her to make up missed time by working through her lunch hours, after hours, and on weekends, if necessary, in order to achieve a 40-hour work week. In mid-September 2007, however, Mr. Carollo notified all of the company's employees that reduced business and revenues required cost-cutting, including that employees get their work done during business hours. Employees were no longer permitted to work hours other than the regular 8 a.m. to 5 p.m. office hours without a demonstrated need and advance approval.

On September 22, 2007, a Saturday, Ms. Buhr went into the title company offices to make up work for two days missed during the week. Although she had not received permission to work on the weekend, she later said she felt she needed to come in to keep up with her assignments and her clients' needs. She worked almost three hours. She prepared a time card knowing that she might not get paid for the time worked, but with

the intention of at least letting her supervisor, Scott Montilla, know that she was doing everything she could to keep up with work and in hopes she might be paid. Instead of completing the time card with the close to three hours she had worked, she reported five hours. She would later explain that this was to compensate her for working through her lunch hour two times earlier in the week, a practice that she contends was dictated by management.

Mr. Montilla accepted the time card reflecting the five hours reportedly worked on the weekend. He said she would be paid for the time.

Unbeknownst to Ms. Buhr, Mr. Carollo had received reports from two employees that Ms. Buhr may be padding her time card. After learning of her reported work on Saturday, September 22, Mr. Carollo obtained the records for the building's alarm system for that day and compared her time card to the times she entered and left as reflected on the alarm records. After determining that she had been in the office for less than three hours on Saturday rather than the reported five, he called her into Mr. Montilla's office and fired her summarily for falsifying her time cards, failing to get permission for working on the weekend, and stealing from the company.

The employee hired to replace Ms. Buhr is not disabled.

Ms. Buhr sued Stewart Spokane, alleging violations of the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW. She also asserted claims under the Washington Family Leave Act, chapter 49.78 RCW; the Washington Minimum Wage

4

Act, chapter 49.46 RCW; the Washington wage rebate act, RCW 49.52.050; and for wrongful discharge in violation of public policy.

Before trial, Stewart Spokane moved for summary judgment dismissing Ms. Buhr's claims. In support of its argument that her reasonable accommodation claim should be dismissed, Stewart Spokane presented evidence that Mr. Carollo consistently allowed Ms. Buhr to take time off as she needed when she was sick. The company treated her days missed first as sick leave and then as paid vacation leave. Any additional time off needed would be allowed, but would be unpaid. This was the same policy applied to all employees. Stewart Spokane presented evidence that it never denied a request by Ms. Buhr for a day off due to illness and never questioned her regarding the absences. Ms. Buhr's absences for sickness did not affect her work or become a problem for the company.

Mr. Carollo agreed that he had offered Ms. Buhr a full-time position but with no guarantee that she would work 40 hours a week even in weeks when she had to take days off due to illness. The two never discussed a base work requirement. Mr. Carollo testified that Ms. Buhr was hired with the expectation that she would work Monday through Friday, eight to five. Employees were allowed to work outside the standard eight to five schedule and the company's employee manual allowed for "flex time," but both required advance authorization or arrangement with an employee's supervisor.

Ms. Buhr's deposition testimony was consistent with Mr. Carollo's. She testified:

Q. Did you ever have a specific discussion with anybody at Stewart Title of Spokane about having an accommodation schedule that allowed you to work different hours, other than regular business hours, prior to September of 2007?

A. No.

Q. In fact, prior to September 2007, you were expected to work regular business hours, correct? 8 to 5?

A. Yes.

Q. And to the extent that there was time that needed to be worked after regular business hours, to discuss that with your supervisor first?

A. Yes.

Clerk's Papers (CP) at 351.

Ms. Buhr also testified concerning her understanding whether she was entitled to

"make up" sick time:

Q. Did you have an ongoing arrangement that you could make up sick time in any week where you had sick time?

[Objection]

A. No.

. . . .

Q. Did you have an arrangement with Mr. Carollo that if you took sick time that was unpaid that you had a right to make up that time during that same week by working extra hours?

A. No.

Q. Did you have that arrangement with Dave [Chromy]?

A. No.

Q. Okay. Were there times during your employment with Stewart Title of Spokane where you missed some time due to sickness where you were permitted to work some additional hours to make up for some of that time?

A. Yes.

Q. And was that on a case-by-case basis?

A. When I answer case-by—your case-by-case, if it was going to cause—if the additional hours would not only make up the sick time but then cause overtime, it depended on if we were approved to work overtime during certain times or not. We were in communication about issues like

that because there were very stringent rules when there was to be no overtime.

Q. And so, before working additional hours in a particular week outside of regular work hours, was it your practice that you would ask if it was okay at Stewart Title of Spokane?

A. Yes.

Q. And it was not automatic that it would be permitted, correct?

A. Correct.

Q. It was discretionary on a week-by-week basis at the discretion of the manager, correct?

A. Correct.

CP at 352.

Given the undisputed evidence that Stewart Spokane had afforded Ms. Buhr unpaid leave as needed and never questioned or penalized her for taking it, the trial court dismissed Ms. Buhr's claims that the company violated the WLAD by failing to reasonably accommodate her disability. Based on other undisputed evidence, it also dismissed her family leave claim and her claim for wrongful discharge in violation of public policy. It denied the motion to dismiss her remaining claims.

Trial proceeded in August 2011. Several days into trial, Stewart Spokane moved to strike Ms. Buhr's economics expert, Erick West. It raised the motion after being provided for the first time with slides that Ms. Buhr intended to use as illustrative exhibits during the testimony of Mr. West, whom she planned to call that day. The slides reflected substantive matters that Stewart Spokane represented had not been provided in any formal form in response to discovery. After hearing extensive argument from counsel, the trial court denied the motion to strike Mr. West as a witness but released the

jury for an hour so that Stewart Spokane's counsel could review the slides and question Mr. West about them.

Upon reconvening, Stewart Spokane renewed its motion. It reported that the interview of Mr. West revealed that he had accumulated a large binder of materials over the prior year including communications and materials provided by Ms. Buhr's lawyer, his own notes, and other materials he had compiled and relied upon. They had never been produced in response to discovery.

Ms. Buhr responded that she had fully complied with CR 26(b)(5) by providing Mr. West's report and that Stewart Spokane never requested his deposition in connection with which it could have issued a subpoena for his files. Stewart Spokane replied that it had served an interrogatory and request for production addressing experts' opinions and materials to which Ms. Buhr had only partially responded, representing that she would supplement—but then, apparently, did not.

The court found a discovery violation but that it was not willful. It again refused to strike Mr. West as a witness. It granted a further short continuance in trial, allowing Stewart Spokane to depose Mr. West over the upcoming weekend. It imposed the limited sanction of assessing Stewart Spokane's costs associated with the deposition against Ms. Buhr's lawyer.

At the conclusion of trial, the jury returned a defense verdict. Ms. Buhr appeals.

ANALYSIS

Ms. Buhr contends on appeal that the trial court erred in (1) dismissing her accommodation claim on summary judgment, (2) refusing to instruct the jury on reasonable accommodation, (3) refusing to extend Ms. Buhr's opportunity for discovery,[2] and (4) imposing sanctions on Ms. Buhr's counsel as requested by Stewart Spokane in connection with the testimony of Mr. West. We address her assignments of error in turn.

I

Ms. Buhr contends that the trial court erred in granting summary judgment dismissing her claim that Stewart Spokane failed to reasonably accommodate her known disability.

The WLAD declares it an unfair practice for an employer to discharge, discriminate in conditions of employment, or refuse to hire any person on the basis of a sensory, mental, or physical disability. RCW 49.60.010, .180. Under RCW 49.60.180, an employee may have a cause of action for two types of discrimination: an employer who fails to accommodate an employee's disability faces an accommodation claim; an employer who discharges an employee for a discriminatory reason faces a disparate

---

[2] Ms. Buhr characterizes the third assignment as "abuse[ of] discretion in terminating Lisa Buhr's right to discovery when discovery had just initiated." Br. of Appellant at 1. The assignment and issue require reframing, as discussed in more detail in our opinion in *Buhr*, No. 30164-8-III, slip op. at 5-6.

treatment claim. *Becker v. Cashman*, 128 Wn. App. 79, 84, 114 P.3d 1210 (2005) (citing

*Roeber v. Dowty Aerospace Yakima*, 116 Wn. App. 127, 135, 64 P.3d 691 (2003)).

To establish a prima facie case for failure to accommodate an employee's

disability, the employee must show that he or she (1) had a sensory, mental, or physical

abnormality that substantially limited his or her ability to perform the job; (2) was

qualified to perform the essential functions of the job with or without reasonable

accommodation; (3) gave the employer notice of the disability and its accompanying

substantial limitations; and (4) after notice was given, the employer failed to adopt

measures that were medically necessary to accommodate the disability. *Riehl v.*

*Foodmaker, Inc.*, 152 Wn.2d 138, 145, 94 P.3d 930 (2004); *Becker*, 128 Wn. App. at 84;

*but cf. Johnson v. Chevron U.S.A., Inc.*, 159 Wn. App. 18, 30, 244 P.3d 438 (2010)

(suggesting that the 2007 amendment of RCW 49.60.040 has broadened the fourth

element). If the plaintiff cannot establish a prima facie case, the defendant is entitled to

judgment as a matter of law. *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 182, 23 P.3d

440 (2001), *overruled in part on other grounds by McClarty v. Totem Elec.*, 157 Wn.2d

214, 137 P.3d 844 (2006).

In moving for summary judgment, Stewart Spokane did not dispute Ms. Buhr's

contention that she had health conditions that constituted a disability under the WLAD

and was qualified, with the allowance for extraordinary absences that it had provided, to

perform the essential functions of her job. Although she was absent approximately

16 percent of the regular work days for the period of August 16, 2006 through September 30, 2007, her performance remained satisfactory. The company contended instead that she could not establish that it failed to accommodate her disability. The company presented evidence, which Ms. Buhr did not dispute, that it allowed her to take time off as needed. Providing a part-time or reduced schedule is recognized as one type of reasonable accommodation. WAC 162-22-065(2)(a) (adjusting work schedule is an example of a reasonable accommodation); *cf.* 42 U.S.C. § 12111(9)(B) (for purposes of the ADA,[3] "reasonable accommodation" may include part-time or modified work schedules); *accord* 29 C.F.R. § 1630.2(o)(2)(ii).

On appeal, Ms. Buhr argues that Stewart Spokane's accommodation was inadequate because an accommodation that resulted in her running out of sick leave and having to take unpaid leave

> affects the employee's ability to perform their job because they get fired for the next absence. Running out of sick leave affects Buhr's job performance because she stops being paid for her work (ditto).

Reply Br. of Appellant at 7-8. But Ms. Buhr presented no evidence that Stewart Spokane's allowing her to work a reduced work week had resulted in Ms. Buhr being fired or threatened with being fired for an absence. She presented no evidence that it stopped paying her for her work.

---

[3] Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213.

An unstated basis of the claim, but an undercurrent of Ms. Buhr's evidence and argument, was that Stewart Spokane's accommodation reduced her ability to make full-time earnings. She cites no authority for the proposition that an employer's duty to accommodate an employee's disability includes figuring out a way that an employee who needs to miss work days can make the same earnings as an employee who does not. A number of cases dealing with religious accommodation hold that an employer complies with its accommodation duty by providing unpaid leave, since "[g]enerally speaking, '[t]he direct effect of [unpaid leave] is merely a loss of income for the period the employee is not at work; such an exclusion has no direct effect upon either employment opportunities or job status.'" *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70-71, 107 S. Ct. 367, 93 L. Ed. 2d 305 (1986) (most alterations in original) (quoting *Nashville Gas Co. v. Satty*, 434 U.S. 136, 145, 98 S. Ct. 347, 54 L. Ed. 2d 356 (1977)); *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007) (employer's requirement that employee take Saturdays off from work without pay, "reduc[ing] his annual pay and eventual pension," did not establish discriminatory discipline or discharge even where it reflected a change from employer's prior policy of scheduling him with Saturdays off). The federal district court for the Eastern District of Washington has characterized the rationale of the religious accommodation cases as "equally applicable" to a claim for reasonable accommodation of a disability under the WLAD. *Barron v. Safeway Stores, Inc.*, 704 F. Supp. 1555, 1567 (E.D. Wash. 1988).

12

Whether an employer's duty to reasonably accommodate a disabled employee needing exceptional time off includes guaranteeing that he or she will still be able to make full-time earnings presents a legal question, not a factual one.

The law is well settled. "[T]he scope of an employer's duty to reasonably accommodate an employee's abnormal condition is limited to those steps necessary to enable the employee to perform his or her job." *Jane Doe v. Boeing Co.*, 121 Wn.2d 8, 14, 846 P.2d 531 (1993). "The term 'reasonable' is linked to necessity and limits the duty to 'removing sensory, mental or physical impediments to the employee's ability to perform his or her job.'" *Riehl*, 152 Wn.2d at 146 (quoting *Jane Doe*, 121 Wn.2d at 21).

"An employer need not necessarily grant an employee's specific request for accommodation. Rather, an employer need only 'reasonably' accommodate the disability." *Pulcino v. Fed. Express Corp.*, 141 Wn.2d 629, 643, 9 P.3d 787 (2000) (citing *Snyder v. Med. Serv. Corp. of E. Wash.*, 98 Wn. App. 315, 326, 988 P.2d 1023 (1999), *aff'd*, 145 Wn.2d 233, 35 P.3d 1158 (2001)), *overruled in part on other grounds by McClarty*, 157 Wn.2d 214; *accord Riehl*, 152 Wn.2d at 146 n.2 (employer does not have a duty to grant an employee's specific request). Where multiple methods of accommodation exist, the employer is entitled to select the method; the employee is not. *Frisino v. Seattle Sch. Dist. No. 1*, 160 Wn. App. 765, 779, 249 P.3d 1044, *review denied*, 172 Wn.2d 1013 (2011); *Wilson v. Wenatchee Sch. Dist.*, 110 Wn. App. 265, 270, 40 P.3d 686 (2002). Once it is determined that the employer's proposed accommodation is

13

reasonable, "'the statutory inquiry is at an end. The employer need not . . . show that . . . the employee's alternative accommodations would result in undue hardship.'" *Sharpe v. Am. Tel. & Tel. Co.*, 66 F.3d 1045, 1050 (9th Cir. 1995) (quoting *Ansonia*, 479 U.S. at 68-69 in the context of a disability discrimination claim asserted under the WLAD).

Undisputed facts demonstrated by Stewart Spokane support the conclusion that Stewart Spokane made special allowances for Ms. Buhr that enabled her to perform the job of customer service representative. The trial court did not err in dismissing her reasonable accommodation claim.

## II

After the trial court dismissed Ms. Buhr's reasonable accommodation claim it granted, in part, Stewart Spokane's pretrial motion seeking to restrict evidence and argument relating to accommodation. While it did not foreclose all use of the term "accommodate," the trial court limited Ms. Buhr's references to accommodation to the "ordinary, everyday parlance," not to denote a legal concept, duty, or right of accommodation. 1 Report of Proceedings (RP) at 55-59. She argues that this was error, contending that "[a]ny disparate treatment claim includes the concept of reasonable accommodation." Br. of Appellant at 22 (emphasis added).

Her arguments are not persuasive. As earlier discussed, reasonable accommodation and disparate treatment are distinct theories. A disparate treatment claim arises when an employer fires or otherwise discriminates against a qualified person

14

because of his or her disability. The adverse employment actions by Stewart Spokane

that Ms. Buhr contended were motivated by discriminatory animus were its alleged

refusal to allow her to work outside normal business hours and its discharge of her in

October 2007.

Where, as here, a disparate treatment claim survives a motion for summary

judgment and proceeds to trial, the trier of fact hears and evaluates the parties' dueling

explanations for an employer's actions and determines whether the employee has carried

her ultimate evidentiary burden of demonstrating that discriminatory animus was more

likely than not a substantial factor precipitating those actions. *Hill*, 144 Wn.2d at 186-87

(citing *Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 311, 898 P.2d 284

(1995)).

The trial court's elements instruction on Ms. Buhr's disparate treatment claim

correctly set forth the law, stating in relevant part:

> To establish her claim of discrimination on the basis of her
> disability, Lisa Buhr has the burden of proving one of the following
> propositions:
> (1) That her disability was a substantial factor in Stewart Title of
> Spokane's decision to terminate her. Lisa Buhr does not have to prove that
> disability was the only factor or the main factor in the decision. Nor does
> Lisa Buhr have to prove that she would have been retained but for her
> disability; or
> (2) That Stewart Title of Spokane treated Lisa Buhr less favorably
> in the terms and condition of employment, when compared to other
> similarly situated non-disabled employees, and that her disability was a
> substantial factor in Stewart Title of Spokane's less favorable treatment of

her. Lisa Buhr does not have to prove that her disability was the only factor or main factor in the decisions to treat her less favorably.

CP at 2272 (Instruction 8).

Ms. Buhr argues that a possible duty of accommodation needed to be addressed in the disparate treatment instruction, however, pointing to WPI 330.32, which sets forth the elements of a disparate treatment claim. 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 330.32, at 375 (6th ed. 2012) (WPI).[4] One of the

_____

[4] WPI 330.32 provides:
Discrimination in employment on the basis of disability is prohibited.
To establish [his] [her] claim of discrimination on the basis of disability, ____(name of plaintiff)____ has the burden of proving each of the following propositions:
(1)    That [he] [she] [has a disability] [or] [is perceived to have a disability];
(2)    That [he] [she] is able to perform the essential functions of the job in question [with reasonable accommodation]; and
(3)    That [his] [her] [disability] [or] [the perception of [his] [her] disability] was a substantial factor in ____(name of defendant's)____ decision [to terminate] [not to promote] [not to hire] [him] [her] [to lay [him] [her] off]. ____(Name of plaintiff)____ does not have to prove that [perceived] disability was the only factor or the main factor in the decision. Nor does ____(name of plaintiff)____ have to prove that [he] [she] would have been [retained] [hired] [promoted] but for [his] [her] [perceived] disability.
If you find from your consideration of all of the evidence that each of these propositions has been proved, then your verdict should be for ____(name of plaintiff)____ [on this claim]. On the other hand, if any of these propositions has not been proved, your verdict should be for ____(name of defendant)____ [on this claim].
(Alterations in original.)

"propositions," or elements, that the instruction states a plaintiff must prove is that "[she] is able to perform the essential functions of the job in question [with reasonable accommodation]." *Id.* (alterations in original). It is not uncommon for an employee alleging disability discrimination to assert both a reasonable accommodation and a disparate treatment claim. If both claims are still in the case at the time of trial, the element of qualification with accommodation would be needed in the disparate treatment instruction.

Here, though, the trial court modified the pattern instruction in several respects, including by dropping the requirement that Ms. Buhr prove that she was able to perform the essential functions of the job in question (with or without reasonable accommodation). It had been established in the summary judgment process that with the allowances for absences made by Stewart Spokane, Ms. Buhr was able to perform all essential functions of her job.[5] For that matter, the trial court's instruction also dropped

---

[5] When the court addressed instructions with the parties' lawyers informally, during a break in the evidence, Stewart Spokane's lawyer said the following about why he dropped the first and second "propositions," or elements, from WPI 330.32:

I left off point 1 where it asks the jury to find that she has a disability, a perceived disability, because we've acknowledged that. That's stipulated to. I have that in my materials. So when there's something that's stipulated to, it would be redundant and misleading to ask the jury to find that. So that's not necessary.

Number two, the second part of Plaintiff's Number 10, she asks the jury to make a decision as to whether or not she was able to perform the essential functions of the job in question with reasonable accommodation. Again, that is not an issue in the case. There's never been a dispute about

any requirement that Ms. Buhr prove that she had a disability, since that was not in dispute.

In dropping two elements that a plaintiff would otherwise have to prove in order to recover, the trial court plainly made Ms. Buhr's burden of proof easier, not harder. Yet she took exception, arguing that not including the omitted elements would be reversible error. Not only did she advocate instructing the jury that she must prove her ability to perform the job with reasonable accommodation, she argued that the trial court should give WPI 330.34, which explains the concept of reasonable accommodation.

Jury instructions are proper if, when read as a whole, they (1) permit both parties to argue their theory of the case, (2) are not misleading, and (3) properly inform the jury of the applicable law. *Kirk v. Wash. State Univ.*, 109 Wn.2d 448, 460, 746 P.2d 285 (1987); *Easley v. Sea-Land Serv., Inc.*, 99 Wn. App. 459, 467, 994 P.2d 271 (2000). Whether to give a particular instruction is a matter within the discretion of the trial court.

---

the fact that she is indeed able to perform the essential functions, and so there is no question about whether or not she needed reasonable accommodation to perform the essential functions of her job. That part of the case has been dismissed. And so there is—there is no reason to ask the jury about an issue that's not before them on this case.

And so the reason I—it will confuse the jury, and the reason I have fashioned the instruction the way I have is, as I would submit, it precisely identifies the issues that are in front of the jury.

9 RP at 1656-57.

18

*Boeing Co. v. Key*, 101 Wn. App. 629, 632, 5 P.3d 16 (2000). Only an alleged error of law in a jury instruction is reviewed de novo. *Id.*

The trial court correctly concluded that Ms. Buhr could not reasonably complain where it dropped two elements of her required proof. Including the unneeded concept of reasonable accommodation where the court had already determined as a matter of law that Stewart Spokane had satisfied its duty of accommodation would only run the risk of suggesting that the company might have a duty of accommodation under the WLAD that it had not yet fulfilled.

> The Note on Use section for WPI 330.32 states that the court should
>
> use the bracketed phrase "with reasonable accommodation" and the definition of reasonable accommodation in WPI 330.34 if, *in order to make a threshold showing of qualification for the position, the plaintiff must show that he or she could perform the job's essential functions with reasonable accommodation.* The phrase and definition of reasonable accommodation will not be used if the plaintiff does not assert that accommodation would be necessary.

WPI 330.32, at 376 (emphasis added). Although the last sentence quoted from the comment contemplates a plaintiff who does not assert a need for accommodation, the same modification was appropriate where the employer did not contest the employee's qualification based on an accommodation the court had already determined to be adequate. The trial court did not abuse its discretion in making a modification to the pattern instruction that was appropriate in this case.

19

The trial court limited evidence and argument about reasonable accommodation for the same reason it refused Ms. Buhr's requested instructions. She challenges the court's limitation on her presentation of evidence as well.

In light of dismissal of the accommodation claim, Stewart Spokane moved the court for an order in limine excluding any evidence that Stewart Spokane "failed to accommodate the plaintiff." CP at 1999, ¶ 15 (boldface and capitalization omitted). It argued that use by Ms. Buhr, her lawyer, or her witnesses of the term "accommodation" or "failure to accommodate" "would confuse and mislead the jury, where no such accommodation claim remains." *Id.* The trial court granted the motion in part, ruling that the lawyers could use the terms colloquially, but with directions to use "an appropriate amount of circumspection so that there won't be any confusion with the dismissed claim." 1 RP at 59.

A trial court's grant or denial of a motion in limine is within its discretion and will not be disturbed on appeal absent an abuse of that discretion. *Gammon v. Clark Equip. Co.*, 38 Wn. App. 274, 286, 686 P.2d 1102 (1984), *aff'd*, 104 Wn.2d 613, 707 P.2d 685 (1985).

We have already rejected Ms. Buhr's argument that accommodation is an element of every disparate treatment claim. We cannot conceive why discussion of accommodation would be necessary to present the claim; even so, the trial court permitted Ms. Buhr to use the terms in a colloquial sense. Ms. Buhr does not present a

single example of when and how the trial court's limitation on discussion of "accommodation" or "failure to accommodate" frustrated her presentation of relevant evidence and argument. She fails to demonstrate any abuse of discretion.

### III

Ms. Buhr's next assignment of error is to the trial court's refusal to extend the discovery cutoff. That decision is a principal focus of Ms. Buhr's companion appeal and is addressed in our opinion in that case. *Buhr v. Stewart Title of Spokane LLC*, No. 30164-8-III, slip op. at 7-10 (Wash. Ct. App. Aug. 1, 2013). The only consequence of that decision prejudicially affecting the decision on review here that is not addressed by the companion decision is her claimed inability to obtain time cards for other employees.

In timely written discovery, Ms. Buhr requested all time cards for a number of Stewart Spokane employees for the period June 2007 through December 2007. 8 RP at 1545. Stewart Spokane objected to the request for other employees' time cards as irrelevant. Ms. Buhr did not move to compel production before the discovery cutoff.

A couple of months after the discovery cutoff, in connection with her motion to extend discovery, Ms. Buhr argued to the trial court that among the documentary discovery she now needed was "'all hourly time cards from *each hourly employee* in the Stewart office between *January* [20]07 and December [20]07.'" *Id.* at 1547 (emphasis added). Although the trial court ordered Stewart Spokane to produce other records at that time, it did not order production of the time cards.

21

At trial, Ms. Buhr was allowed to present her own testimony and that of other defense witnesses supporting her allegation that Stewart Spokane directed employees to disguise any lunch hours they worked by recording the time elsewhere. Stewart Spokane then presented the testimony of two employees that when required to work through their lunch hours they did not disguise the time but reported it, and were paid. Stewart Spokane did not offer time cards as evidence to support their testimony.

Following this testimony, Ms. Buhr moved the trial court to compel Stewart Spokane to produce employee time cards. She argued that without the time cards she had no means to impeach the witnesses' testimony. Stewart Spokane responded that it had timely objected to her discovery requesting the time cards based on its position that other employees' time records were irrelevant. It claimed that in presenting testimony on that score at trial, it was only responding to testimony that the trial court had allowed Ms. Buhr to present. It argued that if Ms. Buhr had believed that its objection was not well taken she should have moved to compel production before the discovery cutoff.

The trial court adopted Stewart Spokane's arguments in denying Ms. Buhr's motion to compel.

In the companion case, we found no manifest abuse of discretion by the trial court in refusing to extend the discovery process beyond the discovery cutoff. There is nothing about this requested discovery that causes us to reach a different conclusion. As noted in the companion decision, the purpose of a discovery cutoff date is "to protect the parties

from a continuing burden of producing evidence and to assure them adequate time to prepare immediately before trial." *Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347 (9th Cir. 1984). A party in the midst of trial is equally if not more in need of protection from the burden of producing evidence. Although Ms. Buhr demonstrates that a timely motion to compel production of other employees' time cards might have been successful, she has not demonstrated that the court abused its discretion in holding her to the deadline for resolving discovery issues established by the case schedule order.

IV

Ms. Buhr finally challenges the trial court's imposition of sanctions against her lawyer for a discovery violation relating to documents possessed and exhibits prepared by her expert, Erick West. She argues that the court had no basis for imposing sanctions.

A history of Mr. West's identification and related discovery and disclosures is needed to place the parties' positions into context.

Sometime early in the case, Stewart Spokane served written discovery on Ms. Buhr that included its Interrogatory 22 and Request for Production 12 about expert witnesses. The discovery requests and responses are not included in the record on appeal but copies were handed up to the court during argument of these issues, according to the record. The parties read or paraphrased the requests during argument. Interrogatory 22 evidently asked for an identification of the subject matter on which any expert would testify, the substance of the facts and opinions on which the expert was expected to

testify, a brief summary of the grounds for each opinion, a resume, and a list of prior lawsuits and other testimony. *See* 4 RP at 591. The request for production asked Ms. Buhr to "'[p]roduce all documents in plaintiff's possession or under plaintiff's control relating to the information set forth in Interrogatory Number 22.'" *Id.* at 691. Instructions to the discovery evidently requested supplemental answers "'if you or your attorney obtains further information between the time the answers are served and the time of trial and no later than 60 days prior to trial.'" *Id.* at 592.

On March 12, 2010, Ms. Buhr identified Dr. Frederick DeKay as an economic expert in response to the discovery. Her answer to Interrogatory 22 stated, "'See Dr. DeKay's curriculum vitae at Request for Production Number 12.'" *Id.* at 595. No objection was made to the request for production. It was reportedly answered, "'Will supplement upon receipt.'" *Id.*

Dr. DeKay thereafter retired. The cutoff imposed by the original case schedule order for identifying lay and expert witnesses passed on August 16, 2010.

On November 4, 2010, Ms. Buhr identified Erick West to substitute as her economic expert.

The discovery cutoff set by the original case schedule order passed on January 10, 2011. Stewart Spokane did not depose Mr. West before the cutoff of discovery. It would later explain its decision not to depose him as based on the fact that it did not have any of

24

the information about him or his opinions that would have allowed it to depose him effectively and therefore relied on its written discovery.

On March 18, 2011, Ms. Buhr provided Stewart Spokane with an unsigned draft report from Mr. West as an attachment to a mediation statement.

On July 28, Ms. Buhr provided Mr. West's final signed report to Stewart Spokane.

As of the first day of trial (Monday, August 8), Stewart Spokane claimed not to have received a list of cases in which Mr. West had testified. On the first day of trial, it moved to strike Mr. West as a witness. The court denied the motion.

Mr. West appeared at court on the morning of Thursday of the first week of trial (August 11), when Ms. Buhr planned to call him to testify. Before trial commenced that morning, Ms. Buhr's lawyer provided Stewart Spokane with copies of illustrative exhibits that Mr. West had brought in the form of slides to be projected during his testimony. At the outset of proceedings, Stewart Spokane renewed its motion to strike Mr. West or to bifurcate and defer trial on damages claiming it had never before seen the illustrative exhibits.

Rather than sanction Ms. Buhr, the trial court recessed for a time so that Stewart Spokane's lawyers could review the slides and speak with Mr. West about them. Following that discussion with Mr. West, Stewart Spokane's lawyers reported to the court that he had a large binder of documents, none of which had been produced in response to Stewart Spokane's request for production. It was this third request to strike

Mr. West as a witness that resulted in the trial court's finding of a nonwillful discovery violation, for which it ordered Ms. Buhr to produce Mr. West for a deposition that weekend and assessed the associated costs against her lawyer.

A trial court has broad discretion to grant or deny sanctions for discovery violations, and its decision will not be disturbed absent a clear abuse of discretion. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006); *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 338, 858 P.2d 1054 (1993).

It is true, as Ms. Buhr argued, that parties will commonly depose an opposing party's expert witness and can obtain his or her files through a subpoena. It is also true that Stewart Spokane's instruction demanding supplementation went beyond CR 26(e) and does not stand on the same footing as the more limited duty to supplement provided by the rule. Nonetheless, not having received any objection, Stewart Spokane was entitled to rely on the fact that it had served the written discovery and received a response promising supplementation.[6]

---

[6] During trial, Ms. Buhr argued that the trial court's rulings denying her motion to compel production of time cards she had timely requested, yet granting, in part, Stewart Spokane's motion objecting to testimony by Mr. West, were inconsistent and unfair. The key difference was that Stewart Spokane objected early on to her discovery request, putting her on notice that it did not intend to produce the time cards and that she would need to take further action to obtain them. Ms. Buhr did not object to Stewart Spokane's request and promised supplementation.

Ms. Buhr had substituted an expert after the witness identification deadline and proceeded toward trial knowing that the expert had received or generated documents that she had never produced to Stewart Spokane. Even if she forgot about her response promising supplementation, making her conduct nonwillful, her knowledge that she had not provided Stewart Spokane with anything but Mr. West's report should have been a red flag that she had likely overlooked something. That, and the prejudice to Stewart Spokane, were bases that could support a sanction. The trial court's imposition of limited sanctions for the violation was well within its discretion.

Finally, Ms. Buhr requests attorney fees on appeal. RAP 18.1 permits recovery of reasonable attorney fees or expenses on review if applicable law grants that right. Ms. Buhr relies on RCW 49.60.030(2), which provides that a person injured by any act in violation of the WLAD is entitled to attorney fees. *Frisino*, 160 Wn. App. at 786. The right extends to fees incurred on appeal by a prevailing party, *see id.*, but Ms. Buhr has not prevailed. The request for fees is denied.

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the

No. 30355-1-III
*Buhr v. Stewart Title of Spokane LLC*

Washington Appellate Reports but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Kulik, J.